H. A. LONDON, Jr., and the Commissioners of Pittsboro v. AARON G. HEADEN.

*Penalty for refusing to accept office -- Constitutionality of Statute -- Justice's Court -- Practice therein.*

1. The provisions of Chapter 111, § 25, Battle's Revisal, prescribing a a penalty of $25 against any person who is duly elected or appointed Town Constable and who refuses to qualify, &c., are not in conflict with Art. I., § 17, of the Constitution.

2. The facts found on a trial in a Justice's Court where the judgment is for $25 or less, are conclusive upon an appeal to the Superior Court.

3. In such case the Justice should not include in the record sent up a statement of the evidence, unless there were exceptions to its admission in his Court.

4. In an action in a Justice's Court for a penalty, it is sufficient if the warrant states the amount due and how claimed.

(*Duffy* v. *Averitt*, 5 Ire. 455; *State* v. *McEntyre*, 3 Ire. 171, cited, distinguished and approved.)

CIVIL ACTION, commenced in a Justice's Court in the County of CHATHAM and heard at Chambers on the 15th of June, 1876, before *Kerr, J.*

This action was brought before a Justice of the Peace, to recover the penalty of $25 given by Bat. Rev. Ch. 111, § 25, against every person duly elected or appointed Town Constable, &c., who after being duly notified, shall neglect or refuse to qualify and perform the duties of his office or appointment.

The Justice gave judgment against the defendant who appealed to the Superior Court, where the Judge reversed the judgment of the Justice, and gave judgment for the defendant for costs, from which, the plaintiff appealed to this Court.

*Messrs. Busbee & Busbee,* for the plaintiff.
*Mr. J. H. Headen,* for the defendant

RODMAN, J. (After stating the facts as above.) The Constitution Art. IV. § 33, says, that the party against whom judgment shall be rendered by any Justice of the Peace, may appeal to the Superior Court, from the same. "But if the judgment shall be for $25 or less, then the case shall be heard in the appellate Court, only upon matters of law."

The effect of this clause of the Constitution, has not so far as I remember, been commented on by this Court. What I shall say about it, is not intended to apply to any cases except such as are similar in pleadings and proceedings to the present.

In this case, the only plea of the defendant was a general denial of each and every allegation in the warrant. We will assume that this was sufficient to put in issue each material allegation.

When upon such an answer the Justice finds for the plaintiff, he must be understood as finding that each material allegation of the complaint is true. This finding of facts is made by the section of the Constitution cited, conclusive up-

on the Superior Court on appeal, and the jurisdiction of that Court is confined to adjudging whether the facts so established entitle the plaintiff to judgment or not.

In this case the Justice sends up with the statement of his proceedings, a statement of the evidence introduced before him. The statute prescribing his duties (Bat. Rev. ch. 63. § 57,) requires him to file with the Clerk of the appellate Court, "the papers, proceedings and judgment in the case." This does not seem to include a statement of the evidence, unless there was an exception by one party or the other, by reason of the admission or rejection of evidence, in which case his decision upon it would be part of the proceedings, and therefore would be properly sent up. We do not therefore consider his statement of the evidence, as adding to the effect of his general finding of the facts for the plaintiff, although, if it appeared from such statement that there was no evidence to support his finding on any material allegation, it would be different.

We have then but two questions to consider: 1. Do the facts alleged in the warrant bring the case within Ch. 111, § 25 of Bat. Rev.?

Upon the authority of *Duffy* v. *Averitt* 5 Ire. 465. which was an action by warrant to recover penalties for not working on a public road, we think that the material facts are sufficiently alleged, and there is in this warrant, what was wanting in the warrant in that case, a reference to the statute by which the penalty is given. It is sufficient if the warrant states the sum due, and how claimed. We think the above observations meet all the objections taken in the defendant's grounds of appeal, and repeated on the argument here, except;

2. That the Act giving the penalty is unconstitutional.

For this proposition the defendant relies on Art. I, § 17, of the State Constitution, which is to the following effect: "No person ought to be taken, imprisoned or disseized of his

freehold, liberties or privileges, or in any manner deprived of his life, *liberty or property, but by the law of the land.*"

It is admitted that an Act of Assembly which violates any constitutional right of the citizen, is not the law of the land ; and personal liberty is a constitutional right. Const. Art. I, § 1, Declaration of Rights. But the meaning of general expressions, such as "liberty" is qualified by the doctrines of the common law which our forefathers brought to Carolina with them, and which as modified to suit our institutions, have ever since been held a part of the law of this State.

It is a doctrine of the common law, that every citizen, in peace, as well as in war, owes his services to the State when they are demanded. This right stands on at least as high a necessity as the right of eminent domain, by which a man's property may be taken for public use against his consent. The English authorities to this effect, are numerous. The city of London enacted a by-law that any freeman of the city who should be elected Sheriff, and who failed or refused to give a bond and serve as such, should forfeit £400, unless he had a reasonable excuse. Vanacker was elected and refused to serve, and was imprisoned for the penalty. The by-law was held valid. *City of London* v. *Vanacker*, 1 Ld. Raym. 496. The same point was adjudged in *Rex* v. *Larwood*, 1 Salk. 168, and the reason is assigned "That the King hath an interest in every subject and a right to his service, and no man can be exempt from the office of Sheriff, but by Act of Parliament, or letters patent." Comyn's Dig. Offices. B. (B. 1.)

Mr. Dillon thinks the principle of these decisions applicable in the United States, although all of the reasoning in them does not apply, and although he knows of no American decision on the question. 1 Dill. Mun. Corp. § 162.

In *State* v. *McEntyre*, 3 Ire. 171–5, Ruffin, C. J., says: "Now, the Court has no doubt that it is competent to the

Legislature to require any person, appointed to office in any manner prescribed by law, to serve therein under pain of indictment, or any other penalty." The decision in that case, was that the refusal to serve was not indictable, because no statute had made it so.

The duty claimed of the citizen in this case is precisely like that of working on or being overseer of a public road, of serving as a juror, attending as a witness, assisting a peace officer in suppressing a riot, &c., &c. In all these cases, a statute imposes a penalty for a failure to serve, and the right of the Legislature to do it, has never been questioned, and has been many times silently assumed as the undoubted law.

It must often happen, that the performance of the duties of certain offices, especially those connected with the preservation of the public peace, and the collection of taxes, such as sheriff, constable, tax collector and the like, will be so disagreeable, dangerous or unpopular, that no fit man will willingly undertake them for the compensation attached to the office. But the public welfare absolutely requires that they shall be performed, and by fit men. Hence it may become necessary to resort to a sort of civil conscription to fill them. No citizen can be injured by being required to perform a public duty to which all are liable, and no one, however great his abilities or fortune, should consider himself degraded by being required to perform the duties of any office useful or necessary to the public welfare.

> Honor and shame from no position rise,
> Act well your part; *there*, all the honor lies.

It is seen in Vanacker's case that by the by-law of the corporation which imposed the penalty, he was allowed to defend himself by "any reasonable excuse." Our statute contains no such provision.

London *v*. Headen.

Nevertheless, it cannot be doubted that the defendant in the present case might have defended himself by any *legal* excuse; that is, by a plea of any matter which legally disqualified him from performing the duties of the office.   For example, that he was ineligible, as not being a member of the corporation, or that he already was filling some public office, the duties of which were incompatible with those of Town Constable, &c., &c.   But it is clear that such defence could only be made by an answer in avoidance.   The defendant sets up no excuse or defence in avoidance whatever, but contents himself with a denial of the plaintiff's allegations   It is unnecessary therefore for us to inquire whether old age, or physical debility (which have been suggested in this case), would constitute a defence, if pleaded and proved.   Perhaps they would not.   It is said that a woman may be a constable, or an overseer of the poor, and may fill any office the duties of which may be performed by deputy, and that her sex is no excuse for declining such offices.   Comyn's Dig. Officers B. (B. 2.)   *Rex* v. *Stubbs*, 2 T. R. 495.

Such is the law of England.   How it may be in North Carolina we are not called on to say.

Judgment reversed, and judgment here that plaintiff recover $25 and costs.


Per Curiam.                              Judgment accordingly.