THE PEOPLE *ex rel.* THE GERMAN INSURANCE COMPANY

*v.*

THOMAS C. WILLIAMS.

*Filed at Ottawa, March 31, 1893.*

1. OFFICE—*duty to accept—enforced by mandamus.* The refusal of a person duly elected or appointed to a public office, if he is eligible, is an offense at common law, and punishable as such. A party who has been elected to an office owes a duty to the public to qualify himself therefor, and to enter upon the discharge of his duties, and he may be compelled by *mandamus* to assume the duties of such office.

2. A person duly elected to the office of town clerk, who is eligible, on refusal to qualify on notice of his election or appointment, may be compelled to qualify and assume the duties of his office by the writ of *mandamus*, on the relation of any one interested in the discharge of any duty of the office, without any formal demand to accept the office.

3. SAME—*right to resign.* An office being regarded as a burden on the appointee, which he is bound, in the interest of the public, to bear, he has not the right of his own motion to resign the same. His resignation will not become effective to relieve him from the duties of the office until accepted by lawful and competent authority.

This is an original proceeding for *mandamus* to compel the respondent, Thomas C. Williams, to accept, assume and take upon himself and execute the office of town clerk of the town of Mount Morris, in the county of Ogle, in this State, to take and subscribe the oath of office, and to file bond, as required by law.

The petition shows, that on the 31st day of March, 1891, the board of town auditors of the town of Mount Morris,

in said county, acting under a peremptory writ of *manda-mus* issued from this court, audited and allowed to the relator, in this proceding, the sum of $45,050.00, as indebtedness owing by said town to the relator, and made a certificate thereof in conformity with the statute. It is then alleged, that the town clerk of said town had absconded from the State of Illinois, and there being no town clerk of said town then present, and the justices of the peace of said town, and the supervisor thereof, having failed and neglected to fill the vacancy in said office of town clerk by appointment, the said board of town auditors did not, nor could, deliver said certificate to the town clerk of said town, to be kept by him as required by law, and the aggregate amount thereof be certified by the town clerk to the county clerk of said Ogle county, as required by law in such cases. The petition then shows that at the annual town meeting, held in 1891, a town clerk of said town was elected, but the person so elected neglected and refused to qualify, as by law required.

The petition alleges further, that after the failure of the elected town clerk to qualify, as aforesaid, there was sued out of this court an *alias* peremptory writ of *mandamus*, directed, among others, to the supervisor of the town of Mount Morris, the town clerk, the justices of the peace of said town, commanding them, as they had theretofore been commanded, that they immediately, without further excuse or delay, do every act and thing devolving upon them by law, as such officers, for the levy, collection and payment. of a tax sufficient to pay the amount of said claim, etc.; and that they certify obedience, etc. That said writ was served upon all of said officers except the town clerk; that thereafter divers sundry persons, eligible to said office, were, and have been, by the said justices of the peace and supervisor of said town, duly and successively appointed to said office of town clerk of said town, and duly notified thereof, all of whom have neglected and refused to accept,

qualify and serve said office, as required by law; that no annual town meeting or election whatever has been held in said town since the annual election of 1891; that no town clerk has been elected, said office continuing vacant; that a *pluries* writ of *mandamus* issued, but that said office of town clerk continuing and remaining vacant, said *pluries* writ can not be served upon that officer, but remains in the hands of the sheriff, awaiting the filling and incumbency of that office, to be served. The petition shows that since the audit, allowance and certification of said $45,050.00 were made, the said board of town auditors of said town have audited and allowed the further sum of $2,650.00 to the relator, in addition to said previous audit and allowance. The petition alleges, that there being a vacancy in the office of town clerk of said town, on the 17th day of September, 1892, the justices of the peace of said town, and the supervisor thereof, again met, on that day, in said town, for the purpose of filling said vacancy in said office, and by their warrants, under their hands and seals, appointe done Thomas C. Williams, who, for more than ten years then last past had been a resident of said town, and who was on said day a legal voter, and had been for five years or over next before his said appointment; that said board of appointment forthwith notified him of his said appointment, but the said Thomas C. Williams has hitherto wholly neglected and refused to accept said office, and take and subscribe the oath required by law, whereby said office of town clerk has continued to be vacant. It is then alleged, that because of there being no town clerk of said town, the said certificate of audit, so made by said board of town auditors, can not be delivered to the town clerk of said town, to be by him kept, etc.; nor can the aggregate amount thereof be certified to the county clerk of said county, at the same time and in the same manner as other amounts required to be raised for town purposes in said town, to be levied and collected as other town taxes, as is by law required, whereby

the relator is unable to obtain the levy and collection of a tax upon the property of said town, wherewith to pay the amounts so audited and allowed. The prayer is, that as an-- cillary to the original proceeding before mentioned, a writ of *mandamus* be awarded, commanding said Williams to accept, assume and take upon himself said office, etc. The respondent filed a general demurrer to the petition.

Mr. J. A. CRAIN, for the relator.

Mr. RECTOR C. HITT, for the defendant.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The principal question presented is, whether *mandamus* will lie to compel acceptance of a municipal office by one who, possessing the requisite qualifications, has been duly elected or appointed to the same.

It is stated by text writers, that no case has arisen in this country involving this precise question (Merrill on Mandamus, sec. 145; Dillon on Mun. Cor., sec. 162), and in the researches of counsel, and our own examination, none have been found. There are, however, a number of cases where analogous questions, involving the same principle, have been elaborately discussed and determined in the State and federal courts. Very many English cases are found, in which it has been held that it was a common law offense to refuse to serve in a public office, to which one had been elected or appointed under competent authority; and that *mandamus* will lie in such case to compel the taking of the official oath, and entering upon the discharge of the public duty. It is objected that these cases do not show that *mandamus* would lie for the refusal to accept public office, prior to the fourth year of James the First. If the contention be true, it is unimportant whether the particular remedy was by *mandamus*, by the ancient common law, or not. The important subject of inquiry is, whether it was a common law duty to accept and discharge the duties of a public municipal office.

The writ of *mandamus* was in use as early as the 14th and 15th centuries. (*Rex* v. *Cambridge University*, Fort. 202; *Rex* v. *Dr. Gower*, 3 Salk. 230.) It appears from *Dr. Widdington's* case (A. D. 1673), 1 Levinz, 23, that *mandamus* had been in use as early as in the times of Edward 2nd and Edward 3rd, between 1307 and 1377.

Originally it was a letter missive from the sovereign power, commanding the party to whom it was addressed to perform the act or duty imposed. Later it obtained sanction as an original writ, emanating from the King's bench, where, by fiction of law, the King was always present. But it does not seem to have been frequently used, nor adopted as the remedy to compel the acceptance of office, until late in the 17th century. In modern times the uses of the writ, and the purposes to which it will be applied, have been greatly enlarged, and it has come into general use wherever there is a legal duty imposed, and no other remedy is provided by law for a failure to discharge it, and in many other cases against those exercising an office or franchise, where there may be another remedy, but it is less direct and effective. In this State, as in most, if not all, the States of the Union, the proceeding is regulated by statute. (Ch. 87, R. S.)

The common law of England, so far as the same is applicable and of a general nature, and all statutes or acts of the British parliament made in aid of and to supply the defects of the common law prior to the fourth year of James I. (excepting certain statutes), and which are of a general nature and not local to that kingdom, are, by our statutes, made the rule of decision until repealed by the legislature. Thereby the great body of the English common law became, so far as applicable, in force in this State.

It is held in numerous English cases, that by the common law it was the duty of every person having the requisite qualification, elected or appointed to a public munici-

pal office, to accept the same, and that a refusal to accept such office was punishable at common law.

The case of *Rex* v. *Lone*, 2 Strange, 920, was an indictment for refusing to execute the office of constable, by one who had been chosen to it, and it was held that he was indictable by the common law. *Rex* v. *Jones*, id. 1145, was an indictment for not taking upon himself the office of overseer of the poor; it was held that the offense was indictable upon the principles of the common law. See *Rex* v. *Burder*, 4 T. R. 778.

*K. & Q.* v. *Larwood* (A. D. 1695), 4 Mod. *270, was an information against the defendant for his refusal to take the office of sheriff, to which he had been duly appointed; the defense was, that the defendant had not taken sacrament within a year before he was chosen, he being a dissenter, and so the appointment was void under 25 Car. I., ch. 2, and 30 Car. I., ch. 1, disabling papists, etc. It was held, that it was the fault of the defendant not to have received the sacrament, and that his neglect of duty was no excuse, and that he was liable, etc.

In *Vanacker's* case (A. D. 1700) 1 L. Raymond, 496, it was held, that the city of London, a municipal corporation, of common right possessed authority, by by-law of the corporation, to impose penalties for refusal to accept office, Lord Holt remarking, that, "if a franchise be granted to a corporation, it is under a trust that the corporation shall manage it well.  *  *  *  * The acceptance of the charter obliges the body politic to perform the terms upon which it was granted, and as every citizen is capable of the benefit of the franchise, so he ought to submit to the charge also.  *  *  *  * And, therefore, as they have advantage by some franchises, so they ought to submit to the charges of others.  *  *  *  * Therefore, it is necessary that they should have coercive power, to compel persons to take the office upon them, and that without any custom, otherwise this office might be lost to the city." *King* v. *Raines*, 3 Salk. 162.

About the beginning of the 18th century, the English courts adopted *mandamus* as an appropriate remedy in such cases, as it would seem, and the practice has been since followed. *The Queen* v. *Hungerford,* decided in 1708 (11 Mod. \*142), was an information in the nature of *quo warranto,* against a common councilman of Bristol, for refusing to take upon himself the office, etc. The remedy was denied, but it was said, "if they had applied to the court for *mandamus* they should have had it." *King* v. *Bower*, I Barn. & Cress., 585, was *mandamus* to compel the defendant to take the oath, and to take upon himself and execute the office of common councilman of the borough and town of Lancaster. The court said: "It is an offense, at common law, to refuse to serve an office, when duly elected," and refused to hold that the payment of a fine, imposed by by-law of the corporation, discharged the obligation to accept and serve in the office, and a peremptory writ was was awarded. See *Rex* v. *Corporation of Bedford*, 1 East, 53; *Rex* v. *Mayor*, etc., of *Fowey*, 2 B. & Cress., 261; *Clark* v. *Bishop of Sarum*, 1 Strange, 1081; *Pelson's Case*, 2 Lev. 252; *Vintners Co.* v. *Passey*, 1 Burr. 339; *Rex* v. *Grosvenor*, 1 Wils. 18; *Rex* v. *Whitehall*, 5 T. R. 86; *Rex* v. *Leyland*, 3 M. & S. 184.

Further citation from cases will not be necessary; so uniformly has the doctrine been maintained, that there is a legal duty to accept an office when duly elected or appointed, in a public or municipal corporation, at common law, and that *mandamus* is an appropriate remedy in cases of refusal, that it is accepted by all the text writers.

Thus Mr. Grant (Law of Corp., 230) states the rule: "On the other hand, when not being exempt or disqualified, a man is duly elected to an office, the court, if the corporation is a public one, and the office of a sufficiently important nature to justify its interference, and in all cases where the office is connected with the administration of local jurisdiction vested in the corporation, or the administration of

justice, will interfere by *mandamus* to compel him to take upon him and serve the office.''

To the same effect, see Wilcocks, 128; Mechem on Off., sec. 243; High, Ext. L. Rem., sec. 334; Shortt on Inf., 324–8; Tapping, Mand., 189.

In Merrill on Mandamus it is said: ''A party who has been elected to an office, owes a duty to the public to qualify himself therefor and to enter upon the discharge of his duties. Such duty being incumbent on him by law, he may be compelled by the writ of *mandamus* to assume the office and take upon himself the duties thereof. Though he may be subject to an indictment, or fine, for failure to do so, still the writ of *mandamus* will be granted, because neither the indictment nor the fine is an adequate remedy in the premises, since it does not fill the office and prevent a failure of the discharge of the public duties.'' (Sec. 145.)

It follows, necessarily, that if to refuse the office is a common law offense, and punishable as such, that a legal duty attaches to the person to take upon himself the office, which may now be enforced by *mandamus*.

While offices of this class, in England, were accepted as a burden, they have not been generally so regarded in this country. Under our system of local government, even the smallest offices are generally accepted, either because they are supposed to lead to those which bring higher honors and greater emoluments, or because of a sense of duty. To this fact, and perhaps to the prevalent but mistaken idea, that one holding a public office may resign at will, may be attributed the want of decision in this country upon the precise question at issue. The cases bearing upon this question, in this country, have ordinarily arisen, where the incumbent has sought to resign from public office. And it has been uniformly held, that the power to resign did not exist, or resignation become effective to discharge the officer from the public duty, until accepted by lawful and competent authority. In *Edwards* v. *United States* (103

U. S. 471), Edwards had been elected supervisor of the town of St. Josephs, Berrien county, Mich., on April 3, 1876, and entered upon the duties of his office, and on the 7th of June following, resigned, in writing, and filed the same with the town clerk. No action was alleged to have been taken by the township authorities, and the question was: "Was the resignation complete without an acceptance of it, or something tantamount thereto, such as the appointment of a successor." The court holds that it was not, and says: "In England a person elected to a municipal office was obliged to accept it, and perform its duties, and he subjected himself to a penalty by a refusal. An office was regarded as a burden, which the appointee was bound, in the interest of the community and good government, to bear." And it is said, that it followed from this, as a matter of course, that after the office was assumed, it could not be laid down at will. And that court holding that the common law rule prevailed in Michigan, the judgment awarding a peremptory writ, compelling the performance of the duty, as supervisor, etc., was affirmed.

In the case of *Hoke* v. *Henderson*, 4 Dev. (N. C.) 1, it is said, in passing upon the question there at issue: "An officer may certainly resign, but without acceptance his resignation is nothing, and he remains in office. It is not true that an office is held at the will of either party. It is held at the will of both." And after saying that the acceptance of resignations, in respect of lucrative offices, has been so much a matter of course that it has become the common understanding that to resign is a matter of right, but the law is otherwise, it is said: "The public has a right to the service of all the citizens, and may demand them in all civil departments as well as the military." In *The State* v. *Ferguson*, 31 N. J. L. 107, the question was, whether the respondent, at the time of the service of the writ of *mandamus*, was an overseer of highways, etc. The respondent proved that before the service of the *mandamus*

he had sent in his resignation of said office, on which certain of the township committee had endorsed acceptance. It was insisted that the officer had a right to resign at will, and that the mere notification of the proper officers, of the fact, relieves him from performance of the official duty. The Chief Justice, after reviewing the common law authorities, says: "I think it undeniable, therefore, that upon general principles of law, as contained in judicial decisions of the highest authority, the refusal of an office" of the class to which the one under consideration belongs, was an offense punishable by a proceeding in behalf of the public. Regarding, then, the doctrine of the law as established, it seems to be an unavoidable sequence that the party elected, and who is thus compelled by force of the sanction of the criminal law to accept the office, can not afterwards resign it *ex mero motu.* If his recusancy to accept can be punished, it can not be that he can accept, and immediately afterwards, at his pleasure, lay down the office. The same principle has been more or less directly announced in *Van-Orsdale* v. *Hazard,* 3 Hill, 243; *London* v. *Headen,* 76 N. C. 72; *Winegar et al.,* etc., v. *Roe,* 1 Cowen, 258; *People* v. *Supervisors Barnett Tp.,* 100 Ill. 332; *Badger* v. *U. S.,* 93 U. S. 599.

The reason assigned in *Rex* v. *Larwood,* 1 Salk. 168, for the public duty is, "that the King hath an interest in every subject and a right to his service, and no man can be exempt from the office of sheriff but by act of parliament or letters patent." Under our form of government, the principle applies with even greater force than under a monarchy. In a republic the power rests in the people, to be expressed only in the forms of law. And if the duty, preservative of the common welfare, is disregarded, society may suffer great inconvenience and loss, before, through the methods of legislation, the evil can be corrected. Upon a refusal of officers to perform their functions, effective government, *pro tanto,* ceases. All citizens owe the duty of

aiding in carrying on the civil departments of government. In civilized and enlightened society men are not absolutely free. The burden of government must be borne as a contribution by the citizen in return for the protection afforded. The sovereign, subject only to self-imposed restrictions and limitations, may, in right of eminent domain, take the property of the citizen for public use. He is required to serve on juries, to attend as witness, and without compensation, is required to join the *posse comitatus* at the command of the representative of the sovereign power. He may be required to do military service at the will of the sovereign power. These are examples where private right and convenience must yield to the public welfare and necessity. It is essential to the public welfare, necessary to the preservation of government, that public affairs be properly administered; and for this purpose civil officers are chosen, and their duties prescribed by law. A political organization must necessarily be defective, which provides no adequate means to compel the observance of the obvious duty of the citizen, chosen to office, to enter upon and discharge the public duty imposed by its laws, and necessary to the exercise of the functions of government.

It is admitted by the demurrer, that the respondent was legally appointed town clerk of the town of Mount Morris. The office is connected with, and necessary to, the levy of taxes to carry on the municipal concerns of the town and administration of its local jurisdiction. It is shown, that there was a public necessity, as well as that relators had a private interest in the performance of the duties of that office. No election had been held in the town since the annual town meeting of 1891. Numerous persons had been appointed to said office, but it remained vacant, and the duties, consequently, undischarged. It is admitted by the demurrer, also, that claims against the town, in favor of the relator, to a large amount, had been

audited by the board of town auditors of said town, and allowed, and certificate thereof duly made, as provided by law, but that the same could not be delivered to or filed with the town clerk, because of such vacancy in said office, nor could the aggregate amount thereof be certified to the county clerk of said county, to be levied and collected as other town taxes. It is conceded, that the respondent was eligible to the office; that a vacancy therein existed; that he was appointed conformably to the law, and duly notified thereof. (Secs. 1, 2, 3, art. 10, ch. 139, R. S.) The statute provides that every person appointed to the office of town clerk, before he enters upon the duties of his office, and within ten days after he shall be notified of his appointment, shall take and subscribe, before some justice of the peace, etc., the oath or affirmation of office prescribed by the constitution, and within eight days thereafter file the same in the office of the town clerk. (Sec. 2, art. 9, ch. 139, R. S.) Sec. 3 of the same article provides, that if any person elected or appointed to said office shall neglect to take and subscribe the oath, and cause the same to be filed as aforesaid, such neglect shall be deemed a refusal to serve. And sec. 7 of the same article provides: "If any person, elected to the office of * * * * * town clerk shall refuse to serve, he shall forfeit to the town the sum of $25.00." One of the special duties enjoined upon a town clerk is: "He shall annually, at the time required by law, certify to the county clerk the amount of taxes required to be raised for all town purposes." (Sec. 4, art. 12, ch. 129, R. S.) Secs. 127 and 128, of ch. 120, R. S., provide that the county clerk shall determine the rate per cent, upon the valuation of the property of towns, etc., that will produce not less than the net amount of the sums certified to them according to law, to be extended by the county clerk upon the equalized valuation of property in such town, etc. The only mode provided by law by which a tax can be levied upon the property of a town, for the

payment of its debts, or current expenses, is by the certificate of the town clerk of the town to the county clerk, as thus prescribed. It is apparent, therefore, that a public necessity exists for the discharge of the public duty.

It is insisted, that the legislature having provided a penalty for the refusal to accept the office, that that remedy is exclusive, and that a payment of the penalty imposed was intended to be in lieu of the service. We can not concur in this view. The purpose of imposing the penalty, was to enforce the acceptance of the office and performance of its duties, and the statute can not be construed as intending that the person chosen should be discharged from the duty by payment of the penalty, and thereby the purposes of the creation of the office frustrated, and the public duty remain unperformed. Authorities *supra.* It is to be presumed that, had the legislature intended that the payment of the fine should be in lieu of the service, they would have so enacted, and not having done so, the duty remains, notwithstanding the imposition of the fine or penalty. High, Ext. L. Rem., 334, and *supra.*

It is also insisted, that the demurrer should be sustained for the reason that no demand is averred to have been made upon respondent to accept the office and perform its duties. It is alleged that he was duly forthwith notified of his appointment by the board authorized by law to make the same (sec. 3, art. 10, ch. 139, R. S.), and that he refused and neglected to accept the office. Upon being notified, it was his duty by law to take and subscribe the oath of office, and file the same, and enter upon the discharge of the duties.

Relator was not alone interested, nor did the failure of respondent to qualify affect its interest only. On the contrary, the duty, the performance of which is sought to be enforced, is a public duty, commanded by public law. The case is, therefore, clearly distinguishable from one in which the act sought to be enforced is for the benefit of some

private party. In cases of this class no formal demand was necessary as preliminary to the application for *mandamus*. *People ex rel.* v. *Board of Education*, 127 Ill. 624.

We are of opinion that the respondent ought to be required to accept the office of town clerk of said town, to which he has been duly and legally appointed, to take and file the oath as such town clerk, as provided by law, and to discharge the duties of said office, and a peremptory writ of *mandamus* is awarded accordingly.

*Peremptory writ awarded.*