State on the relation of F. N. GATTIS and O. T. EDWARDS v. J. M. GRIFFIN, OSTIA PERRY and J. M. EDWARDS.

(Decided November 28, 1899.)

*Quo Warranto—Title to Office—County Board of Education, Act 1897, Chap. 108—County Board of School Directors, Act 1899, Chap. 732.*

1. When an office is abolished, out and out, the officer is left without an official habitation; but when the office is continued, with the same and even additional duties, although under a different name of the office, the original owner is entitled to it as his property.

2. The Act of 1897, chap. 108, is not repealed but only amended by the Acts of 1899.

CIVIL ACTION in the nature of *quo warranto* to try the title to the office of County Board of School Directors for Chatham County, heard upon the pleadings by *Brown, J.,* at September Term, 1899, of CHATHAM Superior Court.

The complaint alleges that the plaintiffs were legally entitled to the office of County Board of Education of Chatham County, under Act 1897, chap. 108, but were wrongfully ousted by the defendants claiming to act as the County Board of School Directors for the county, under Acts of 1899, chaps. 374 and 732. That the legislation of 1899 did not repeal the legislation of 1897 upon the subject, but was merely amendatory thereof, and that they are still entitled to their office upon one or the other of the two Boards.

The answer relies upon the authority of the Acts of 1899, chaps. 374 and 732, and their election thereunder by the Legislature, for their right to the office of County Board of School Directors for Chatham County.

GATTIS *v.* GRIFFIN.

His Honor, upon the pleadings, rendered judgment in favor of defendants. Plaintiffs appealed.

*Mr. J. A. Giles,* for appellants.

*Messrs. H. A. London,* and *Womack & Hayes,* for appellees.

FAIRCLOTH, C. J., writes the opinion of the Court.

CLARK, J., writes dissenting opinion.

FAIRCLOTH, C. J.     The facts in this case present the same question as that in *Dalby v. Hancock,* at this term, and this must be governed by the same principle announced in that case.     The same legislative acts are relied upon by the defendants.

We were favored with an argument to the effect that the plaintiffs have no property in the office of the Board of Education, because the Board is a public corporation, and, therefore, under the control of the Legislature, and *Mills v. Williams,* 33 N. C., 558, was cited in its support.     In that case the facts were:    That the Legislature in 1846 established a new county by the name Polk.    The county officers were elected and entered on the duties of their respective offices, including the sheriff.    Before their terms expired, the Legislature repealed the act establishing the county, and, after the repealing act, the sheriff arrested the plaintiff under process, and was sued for an assault, the sheriff insisting that the repeal was unconstitutional and that his office still continued. The Court held that the county was a corporation, established by the Legislature for the benefit of the public, and that there was no feature of a contract in it, as there is in private corporations chartered by the Legislature.    It follows as a sequence that when the county was destroyed or abolished by the repealing act, all the county offices went

with it, as they were merely incidental provisions for the public welfare. This is the doctrine of all the cases from *Hoke v. Henderson* to the present time i. e., when the office is abolished, out and out, the officer is left without an official habitation, but when the office is continued with the same duties and even some additional duties although under a different name of the office, the original owner of the office is entitled to it as his property. In the case before us, the act establishing the office is not repealed but only amended, and therein the analogy fails.

Reversed.

CLARK, J., dissents for reasons given in the dissenting opinions in *Greene v. Owens* and *Abbott v. Beddingfield,* at this term.

The County Board of Education of Chatham County was a *quasi* corporation, or municipal corporation, and the matter of its management and control was a matter fully within the powers of the Legislature, by virtue of the necessities arising from the exercise of sovereignty, by a long line of decisions in this State, and lastly by the express provisions of the Constitution. Article VII, sec. 14 and Art. VIII, sec. 1.

FAIRCLOTH, C. J., in *Barnhill v. Thompson,* 122 N. C., 493, in describing what is a public office and applying his description to the Board of Education of Bladen County, said that it was a delegation of the sovereign power to an individual for the public good, which thereby distinguished it from a mere employment or contract.

In *Harris v. Wright,* 121 N. C., 179, the Chief Justice in enumerating the powers which the General Assembly possessed over municipalities under Constitution, Art. VII, sec. 14, said: "Thus was placed at the will and discretion of the Assembly, the political branch of the State Government, the

election of county officers, the duty of County Commissioners, the division of counties into districts, the corporate powers of districts and townships, the election of township officers, the assessment of taxable property, the drawing of money from the county or township treasury, the entry of officers on duty, the appointment of Justices of the Peace, and all charters, ordinances and provisions relating to municipal corporations."

So that the matter of the election and entry on duty of all county and township officers is within the legislative will and discretion.    This was the case when the relators assumed their duties, and if there is a contract, they took with notice of this, and it was a part of their contract.    *Caldwell v. Wilson,* 121 N. C., 469, and particularly the case of *Head v. University,* 19 Wallace, 526, therein cited with approval.

The Constitution gives the Legislature "full" power; the Court has declared this includes the election and entry into office, and that the power of removal is incident to the power of appointment, unless the Constitution prescribes some other tribunal for removal.

This can be sustained without reversing *Hoke v. Henderson,* 15 N. C., 1.    That case has no more application to the case at bar than it has to the case of *Caldwell v. Wilson.*    It was a part of plaintiffs' contract that they "held at the legislative will and discretion."    Mr. Justice DOUGLAS said in *Caldwell v. Wilson,* 121 N. C., 467, that the power of removal was incident to the power of appointment, which was an American recognition of the common-law doctrine that the sovereign could suspend an officer at any time, though such officer held by a life tenure; a power which was exercised in this State in 1868, and recognized as valid by all the Judges, for they took office under and by virtue of the vacation of the life offices of their predecessors.

GATTIS *v.* GRIFFIN.

In *Crenshaw v. U. S.,* 134 U. S., 99, Mr. Justice LAMAR likens these identical powers over municipal corporations to the legislative control of officers, and cites with approval and liberal quotations the case of *Newton v. Commissioners,* 100 U. S., ·548, as an authority that because the Legislature can divide counties, etc., in its discretion, hence, the officers thereunder possess no contractual or vested rights, and he says: "Whatever the form of the statute, the officer under it does not hold by contract. He enjoys a privilege revocable by the sovereignty at will; and one Legislature can not deprive its successor of the power of revocation."

If public office is a contract it is strange that the Court should have held in *London v. Headen,* 76 N. C., 72, from this same county of Chatham, that if one elected constable did not accept and qualify he was liable to a penalty. Is it possible a man can be punished for declining to make a contract with the State?