## HENRY A. SILVER *vs.* JOHN H. T. MAGRUDER.

*Office of the State Librarian — Constitutional Construction.*

Section 3 of Article 7 of the Constitution of 1867, provides that "the State Librarian shall be appointed by the Governor, by and with the advice and consent of the Senate, and shall hold his office during the term of the Governor, by whom he shall have been appointed, and until his successor shall be appointed and qualified." Section 1 of Article 2 provides that "the executive power of the State shall be vested in a Governor, whose term of office shall commence on the second Wednesday of January next ensuing his election, and continue for four years, and until his successor shall have qualified; but the Governor chosen at the first election under this Constitution, shall not enter upon the discharge of the duties of the office until the expiration of the term for which the incumbent was elected; unless the said office shall become vacant by death, resignation, removal from the State, or other disqualification of the said incumbent." The last clause of section 9 of Article 15, provides that "the term of office of the State Librarian shall commence from the time of his appointment." Governor Swann was elected under the Constitution of 1864, for a term of four years from his qualification, which took place on the second Wednesday of January, 1865; and in February, 1868, he appointed the appellant State Librarian, and the appointment was confirmed by the Senate. Governor Bowie was elected under the Constitution of 1867, entered upon the discharge of the duties of his office on the second Wednesday of January, 1869, and on the 2d of February, 1870, at the next regular session of the Legislature, appointed and commissioned the appellee as State Librarian, who qualified and gave bond. The appellant claimed that by virtue of his appointment, he was entitled to hold the office for four years, and refused, on demand made, to surrender it to the appellee. HELD:

That the term of office of the appellant continued only during the term of the Governor by whom he was appointed, and until the appointment and qualification of his successor; and the appellee was entitled to the office of State Librarian at the date of his demand therefor.

APPEAL from the Circuit Court for Anne Arundel County. The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, MAULSBY, BRENT, GRASON and ROBINSON, J.

*Albert Ritchie* and *Reverdy Johnson, Sr.*, for the appellant.

The appellant's term of office does not expire until the end of the regular gubernatorial term, at the beginning of which he was appointed, that is to say, not until the second Wednesday of January, 1872.

The true construction of Art. 7, sec. 3, is, that a Librarian shall be appointed at the beginning of each gubernatorial term, and that his term of office shall be concurrent therewith, that is, for four years.

No question could ever have arisen, in respect to Mr. Silver's term, but for the peculiar arrangement made in the Constitution of 1867, in regard to the office of Governor, under which, while one man was in law the Governor, another was to discharge the duties of the office.ᵒ It is equally clear that the question can never arise again, and if Mr. Silver is to possess the office for a fraction only of what the Constitution plainly intends shall generally be the Librarian's term, then he is the only one who can ever be so affected.

There is no ambiguity in this section until the attempt is made to interpret it by an extraordinary state of facts, arising from an exceptional feature of the Constitution in regard to the Governor.

Whenever ambiguity arises, the law is to be so construed as to reflect, if possible, the meaning of its makers. To reach this, the different parts of the law, the purpose, the subject-matter, the necessity, previous and existing legislation, etc., are all to be considered, and when attained, the intention of the law is to control, even though such construction be contrary to the letter. *Canal Co. vs. R. R. Co.*, 4 *G. & J.*, 152 ; *New Eng. Car Co. vs. B. & O. R. R.*, 11 *Md.*, 90 ; *Gunther & Canfield vs. The State, &c.*, 31 *Md.*, 21.

In construing constitutional law, the intent is, if possible, still more controlling. Besides the means named, the construction is to be guided by the intention of the Conven-

tion, the understanding and authoritative commentaries of its framers, and by the sense in which it was understood by those adopting it, taking the words in their ordinary and common acceptation. *State vs. Mace*, 5 *Md.*, 351; *Manly vs. State*, 7 *Md.*, 146, 147; *Bandel vs. Isaacs*, 13 *Md.*, 223; *Buckingham vs. Davis*, 9 *Md.*, 328.

The words " during the term of the Governor," etc., were intended to have no other effect than to make his term precisely concurrent with a gubernatorial term, instead of extending over until the first Monday of May following, as is the case with civil officers in general, appointed by the Governor. *Art.* 2, *sec.* 13.

Again, " during the term of the Governor," etc., plainly means during such time, or term, as is signified by a gubernatorial term, generally understood, and as generally meant, when referred to by the Constitution. Whether Article 2, section 1, provides for an exceptional gubernatorial term or not, the words in the section in question are used in their general sense. The section also intends that the Librarian's term (of course no reference is made to the filling of vacancies) shall be for a *full* gubernatorial term. There is no such thing known to the Constitution as a gubernatorial term for any other period than four years, and such therefore is the term which the language of the section indicates.

Admitting, for argument, that after Governor Bowie's qualification, Governor Swann was filling a " term," and that it was to continue for one year, it was still not such a term as referred to by Article 7, section 3, and that Article is not to be construed by such a use of the word.

" When we see what is the sense that agrees with the intention of the instrument, it is not allowable to wrest the words to a contrary meaning. *Sedgwick on Stat. and Const. Law*, 227; *Smith vs. Halfacre*, 6 *How.*, (*Miss.*,) 600; *Bac. Ab. Statute*, 246, 247; 1 *Kent's Comm.*, 462, (*marg.*)

Article 7, section 3, refers, at least, to a *full* gubernatorial term, whether the reference be general or not. If Governor Swann had any term, the words, " until the expiration of the

term," etc., show that he could not have had more than a *balance*, or a *fraction*, of a term.

Such tenure as Governor Swann had, was not the "term" referred to in Article 7, section ·3. The appointment of Librarian is to be made by and with the advice and consent of the Senate. The concurrent action can be had only at a *regular* session. *Taylor vs. Hebden*, 24 *Md.*, 202.,

The Constitution, which requires such confirmation, certainly cannot be taken to have intended that the term of this appellant should *constitutionally* expire at least one year before such ·confirmation could possibly be had.

Admitting, even for the argument, that such tenure as Governor Swann had, would be within the reference of Article 7, section 3, *provided it were a "term,"* still his tenure was not, in any constitutional sense, a "*term.*" Governor Swann had an incumbency of the office after the qualification of Governor Bowie, but no "term."

It may be difficult to define exactly the relative *status* of Governor Swann and Governor Bowie toward the State, after the commencement of the latter's term. Governor Bowie was the Governor, and yet restrained from the duties of the office, *Article* 2, *section* 3; Governor Swann had been superseded as Governor, and yet continued to discharge them. Governor Bowie held the office, but Governor Swann was to discharge its duties. The simplest and most reasonable construction is, that the peculiar provision of Article 2, section 1, worked a constitutional delegation of powers, and that every act of Governor Swann was, in legal contemplation, the act of Governor Bowie. Every official act done by him, after Governor Bowie's qualification, was done in the "discharge of the duties," which otherwise would have appertained to Governor Bowie. Those duties had to be performed, and in the restriction placed upon the qualified Governor, Governor Swann, by implication, was authorized to discharge them. One of the first duties of the office is to appoint a Librarian at the beginning of each gubernatorial term, who is to hold his office until the end of such

gubernatorial term. In pursuance thereof, Governor Swann appointed the appellant. In the case of every appointment, and of every other official act done by Governor Swann, the principle has been applied, that it was the same, and just as effective as if it had been done (in the absence of restriction) by Governor Bowie. Every other appointee filled out the full term intended by the Constitution. Why should the Librarian alone be an exception to this principle?

But if such was not the *status* respectively of Governor Swann and Governor Bowie, and if, notwithstanding the qualification of Governor Bowie, and the commencement of his term, Governor Swann was, nevertheless, *Governor* too, he was a Governor without a "term." Article 7, section 3, contemplates the appointment of Librarian by a Governor who *has* a "term;" so that if Mr. Silver was appointed by one who had no term, in the sense in which the word is used in that Article, his is a special case, unprovided for, and must be controlled by the general intent of the instrument.

A limit of time beyond which one is not permitted to discharge the duties of an office, does not constitute a term.

Official terms are fixed and uniform; they are the same for all who fill the office; they admit neither of contraction nor expansion; if a vacancy occur, there is a residue of the term to be filled; and the occupancy of a term is distinguished from the mere incumbency of an office, with temporary authority to discharge its duties.

Governor Swann's tenure failed in every feature to come up to the definition of "a term."

Upon the adoption of the Constitution of 1867, and under its provisions, the official terms of all officers, elected under the Constitution of 1864, were at once abruptly brought to a close. From that time an entirely new point of departure was taken. No one, after 1867, could pretend to hold office by *virtue of an election under the Constitution of* 1864. Provision, of course, was made to safely accomplish the change from one system to the other, and is found in Art. 15, sec. 3.

That Governor Swann had no "term" in the sense of the Constitution, appears, if possible, still more clearly, from the fact that there cannot be two concurrent gubernatorial terms. In the next place, a "term" means a fixed and ascertained period. The incidents of removal, resignation, etc., may terminate the *incumbency* of an office, but not an official term. If the incumbency of an office fail during its term, there happens a vacancy *which must be filled for the residue.*

Again, the Constitution distinguishes elsewhere between the *office* of Governor, and the "discharge of the duties" of that office. It is provided, Article 2, section 7, that in case of a vacancy, during recess, "the President of the Senate shall discharge the duties of said office until a Governor is elected." Should misadventure happen to the President of the Senate, during such incumbency of the office, then "the duties of said office" devolve upon the Speaker of the House. Each might, thus in turn, become the *incumbent* of the office, but could either, in the sense of the Constitution, be called *the Governor,* or could either be said to have a "term?" especially, as each is to act only *until* a *Governor* is elected?

Whatever be the view of the Court on the points presented, one thing is plain, and that is that no ambiguity exists, unless it result from the anomalous provision of Article 2, section 1, in regard to the Executive. That provision mars the completeness and disfigures the uniformity of the Constitution. This being so, the Court will construe it as strictly, and confine its operation as closely as possible. *Smith vs. Halfacre,* 6 *How.,* (*Miss.,*) 600.

It is therefore submitted:

1st. That the Constitution intends that the term of the Librarian shall be for a full gubernatorial term of four years.

2d. That if it were possible to construe Article 7, section 3, by the peculiar circumstances resulting from the extraordinary provision in regard to the Executive, such technical construction is not admissible. The intent being plain, "it is not

allowable to wrest the words to a contrary meaning," and the intent must prevail, even though contrary to the letter.

3d. That after Governor Bowie's qualification, every official act of Governor Swann's was as operative as if performed (in the absence of restriction) by Governor Bowie.

4th. That even if Governor Swann continued to be *Governor*, he was a Governor without a "term," and the appointment of Mr. Silver becomes one unprovided for, and to be controlled by the general purpose of the Constitution.

5th. That neither the Convention nor the people intended or expected the irregular arrangement in regard to the Executive to affect any other office in the State.

*William H. Tuck*, for the appellee.

Did the framers of the Constitution intend the Librarian to hold for a full gubernatorial term of four years?

There is nothing expressed in the instrument to show such design, but there is a strong presumption to the contrary. When a law exists on a given subject, and a new one is made on the same subject, *using different words*, it would seem that some change is intended; else why not use the same terms?

The Constitution of 1864, Art. 7, sec. 4, says, "the Librarian shall be elected for *four years*, and until, &c." The present Constitution does not say he shall hold for *"four years,"* but "during the term, &c.," and of whatever duration that may be, the Librarian would hold accordingly.

Can any reason be assigned for the change of language in the two instruments, except that a different tenure was intended? If the Convention of 1867, had designed that he should serve four years, why not say "shall hold his office for four years, and until, &c."

But how would this construction apply if the Librarian should die or resign during a Governor's term? How long would the new appointment last? Surely it would not continue beyond the term of the Governor making the appointment, and the qualification of an appointee by the new

Governor. Then it may or may not be a four years' term, according to the time of making the appointment. According to the position of the appellant, the new appointment might extend into the term of the next Governor, yet the language of the Constitution negatives such an interpretation, for the Governor's term is made to limit that of the Librarian, whether the appointment be original, or only to fill a vacancy.

Was Mr. Silver appointed during the *term* of Gov. Bowie, and *by him?*

Both these must concur to make good the claim of the present incumbent.

Many instances occur where there are, at the same time, two persons qualified to the same office, for all appointees are to qualify within thirty days, but they do not enter upon their duties until May. *Code, Art.* 68, *sec.* 10.

That was all that Gov. Bowie did or was required to do, when he took the oath of office in January, 1868. He qualified as Governor elect; the same fundamental law that provided for his election and qualification, also defining the beginning of his service, which was the commencement of *his* term.

The Constitution, Art. 2, sec. 1, provides generally for the term of Governors to be elected, but the case of the first Governor was made an exception. The design is plain enough, and the Court will give effect to that intent. This section affects only the Governor *first* elected, and was not intended to interfere with the incumbent or his patronage, by enlarging or restricting it. He was to remain Governor until Gov. Bowie entered upon his duties in 1869.

But if there be a distinction between " term " and " service in office," it supports the claim of the then incumbent as Governor to all intents and purposes; for his *term*, under the Constitution of 1864, is expressly recognized by the Constitution of 1867, as continuing one year after the qualification of the new Governor. His *term* was recognized as unexpired.

He was to serve his four years, that is "until the expiration of the *term* for which he was elected." *Taylor vs. Hebden*, 24 *Md.*, 202, 207.

By Art. 4, sec. 4, of 1851, Judges were to hold office "for the term of ten years from the time of election," and by Art. 4, sec. 27, of 1864, it is provided that the Judges then in office should continue to act as such *until the expiration of the term for which they were respectively elected*, and until, &c., but was it ever imagined that they were merely serving a part of the term of the new Judges, acting in their stead, and not under their own commissions? *Smith & Davis vs. Thursby*, 28 *Md.*, 260.

If Gov. Swann's term continued after the qualification of Gov. Bowie, then, according to the hypothesis on the other side, the latter had none until January, 1869, when Gov. Swann went out, for, as it is said, there cannot be two terms in the same office at the same time.

If there be any doubt as to the construction of the Article relating to the Librarian and Commissioner of the Land Office, reference may be had to other portions of the instrument to remove the difficulty. *Manly vs. State*, 7 *Md.*, 147; *State vs. Jarrett and Harwood*, 17 *Md.*, 328.

It is impossible to suppose that the Convention or the people intended that one Governor should appoint a Secretary of State for his successor; yet, if the construction on the part of the appellant, as to the State Librarian, be correct, the same would apply to the Secretary of State, for his appointment and term are provided for in words of the same meaning, and if Gov. Swann had re-appointed his Secretary of State in January, 1868, then Mr. Carter would be Secretary of State *de jure* now, instead of Mr. Hollyday. *Art.* 2, *sec.* 22.

MAULSBY, J., delivered the opinion of the Court.

The appellant was appointed State Librarian by the Governor and Senate, in February, 1868. The appellee was appointed to the same office, by the Governor and Senate, in

February, 1870. Governor Swann was elected under the Constitution of 1864, for a term of four years from his qualification, which took place on the second Wednesday of January, 1865. Governor Bowie was elected under the Constitution of 1867, entered upon the discharge of the duties of his office on the second Wednesday of January, 1869, and at the next succeeding regular session of the Legislature—on the 2d of February, 1870—nominated the appellee to the Senate, which confirmed the nomination.

The appellant claims that, by virtue of his appointment, he is entitled to hold the office for four years, and has refused, on demand made, to surrender it to the appellee, who applied for a *writ of mandamus,* and a *pro forma order* was passed in the Circuit Court, directing the writ to issue, from which this appeal was taken.

The question presented is, whether the right of the appellant to hold the office has terminated, or whether his term continued for four years from his appointment?

Section 3, of Article 7, of the Constitution of 1867, provides that " the State Librarian shall be appointed by the Governor, by and with the advice and consent of the Senate, and shall hold his office during the term of the Governor by whom he shall have been appointed, and until his successor shall be appointed and qualified." Section 1, of Article 2, provides that " the executive power shall be vested in a Governor, whose term of office shall commence on the second Wednesday of January next ensuing his election, and continue for four years, and until his successor shall have qualified ; but the Governor chosen at the first election under this Constitution shall not enter upon the discharge of the duties of the office until the expiration of the term for which the present incumbent was elected, unless the said office shall become vacant by death, resignation, removal from the State, or other disqualification of the said incumbent." The last clause of sec. 9, Art. 15, provides that " the term of office of the State Librarian and of the Commissioner of the Land Office shall commence from the time of their appointment."

The intent and meaning of the makers of the Constitution are to be ascertained, and " our duty is to interpret it according to its language; where that is plain and unambiguous, we are not at liberty to conjecture what may have been the possible intention of its framers, not expressed in its language." *Smith & Davis vs. Thursby,* 28 *Md.,* 260.

Under the provisions of the Constitution, Governor Swann, the then incumbent, was to continue in the discharge of the duties of the gubernatorial office until the expiration of the term for which he had been elected, unless on the occurring of some one of the contingencies named. In the discharge of those duties, he appointed, with the concurrence of the Senate, the appellant to the office in question. The language of section 3, Article 7, declared that the appellant should hold his office during the term of the Governor by whom he had been appointed, and until his successor should be appointed and qualified.

It is clear that the gubernatorial term fixed by the Constitution was four years, but it is equally clear that an exception was made as to the first four years after the adoption of the Constitution, in respect to the persons who were to hold the office and discharge the duties. It is also clear that the appointee of the Governor, in actual discharge of the duties of the office during that period, was to hold his office from the time of his appointment during the term of the Governor by whom he had been appointed, and until the appointment and qualification of a successor.

It is a rule of construction, that effect must be given to all the words of an instrument, when it can be done. The view which we take gratifies this rule and gives effect to all the words of the Constitution touching the term of office of State Librarian, and there is no room for construction beyond the plain language.

To maintain the construction contended for by the learned counsel of the appellant, it would be necessary to deny effect to the words, " by whom he shall have been appointed."

In the position of the counsel of the appellant, that Governor Swann, during his incumbency, was filling part of the term assigned by the Constitution to Governor Bowie, and that his appointment of the appellant was for the term of Governor Bowie, we cannot concur.

The language of section 1, Article 2, is direct, that "the Governor chosen at the first election under this Constitution, shall not enter upon the discharge of the duties of the office until the expiration of the term for which the present incumbent was elected." The powers to be exercised by Governor Swann are not left to mere implication. It is expressly provided, by sec. 3, Art. 15, that he should continue to hold, exercise and discharge the duties of his office until he should be superseded, under the provisions of the Constitution, and until his successor should be duly qualified.

One of the duties of the gubernatorial office is to nominate, and, with the advice and consent of the Senate, appoint a State Librarian. That duty was imposed on Governor Swann during his incumbency, and, by express terms, denied to Governor Bowie until the expiration of Governor Swann's term. A like duty was imposed on Governor Bowie when he had, by authority of that section, entered upon the discharge of the duties of the office, and the Senate had concurred at a regular session of the Legislature. In both cases, the appointee holds his office during the term of the Governor *by whom appointed.*

We are of opinion that the right of the appellant to hold the office of State Librarian ceased on the expiration of the term of the Governor by whom he had been appointed, and on the appointment and qualification of the appellee, and that the appellee was entitled to the office at the time of the application for the *mandamus* in this case. The order of the Circuit Court is affirmed.

*Order affirmed.*

(Decided 8th April, 1870.)