THE STATE ex inf. ELLIOTT W. MAJOR, Attorney-General, v. WILLIAM M. McKAY.

**In Banc, April 8, 1913.**

1. **TERM OF OFFICE: Ambiguous Statute: Rule of Construction.** If the statute fixing the duration of official tenure is ambiguous that interpretation is followed which limits the term to the shortest time. And a statute declaring that the stenographer of a circuit court "shall hold his office during the term of the judge appointing him" is uncertain, indefinite and ambiguous. [BROWN, J., LAMM, C. J., and WALKER, J., dissenting.]

2. ————: **Court Stenographer: "During Term of Judge Appointing Him."** Where the statute says that the stenographer of a circuit court "shall hold his office during the term of the judge appointing him," it means that he holds the office during the time the judge appointing him actually holds the office of circuit judge. So that where Eastin was elected circuit judge for a term of six years and appointed Ford to the office of stenographer of his court for a term of six years, and after two years Eastin resigned, and a successor to Eastin was elected as the law requires, and said successor appointed McKay stenographer, who qualified, Ford's tenure of the office was thereby terminated. Upon Eastin's resignation, Ford could not continue to hold the office of stenographer during the balance of the term of six years for which the circuit judge (Eastin) appointing him had been elected, but he was entitled to hold it only during the time Eastin held his own office. *Held,* by BROWN, J., dissenting, with whom LAMM, C. J., and WALKER, J., concur, that there is no ambiguity in the

statute; but as the Constitution distinctly fixed the term of the circuit judge at six years, and the Legislature must have known that fact when it declared the stenographer "shall hold his office during the term of the judge appointing him," it meant to make the tenure of the stenographer equal to that of the judge appointing him, and not to terminate it with the resignation of such judge.

3. ———: ———: ———: **Word Term: Intent.** In ordinary parlance by "the term" of a particular officer is meant the time actually served by him; and that which remains of the term fixed by the statute is designated as "the term" of his successor. The intent of the Legislature in declaring that a court stenographer "shall hold his office during the term of the judge appointing him" was that the stenographer appointed by any individual judge should serve only so long as that judge served. The statute means that the sitting judge shall have a stenographer of his own choosing.

*Held*, by BROWN, J., dissenting, with whom LAMM, C. J., and WALKER, J., concur, that the word "term," when used to describe the tenure or time during which an appointee may hold office, carries no ambiguous import, but embraces and means the fixed and definite time prescribed by law for holding said office.

4. ———: ———: **Aided by Other Statutes.** The trend of all the statutes relating to clerks in the various executive offices and stenographers of other courts is to give the appointing power the right to at least designate the appointee, and to authorize the acting chief, who has the appointing power, to select the subordinate.

*Held*, by BROWN, J., dissenting, with whom LAMM, C. J., and WALKER, J., concur, that prior acts of the Legislature may be resorted to to solve, but not to create, an ambiguity; and as the statute under consideration contains no ambiguous or repugnant provision, prior acts are not to be considered in arriving at its meaning.

Quo Warranto.

WRIT DENIED.

*John T. Barker*, Attorney-General, for relator; *Thomas B. Allen* and *Broaddus & Crow* of counsel.

(1) Whether we take the phrase "term of office" in its ordinary sense, or in its technical import, it means one and the same thing: "A fixed and definite period of time." State ex rel. v. Stonestreet, 99 Mo.

372; State ex inf. v. Williams, 222 Mo. 278. In State ex rel. Tilley v. Ford, 41 Mo. App. 128, construing the statute in question, the court said: "So, then, when Judge Spencer entered upon the duties of circuit judge, . . . he was authorized to appoint a court stenographer for his said court in that county. And this he did by selecting and commissioning relator Tilley, who took the office for a tenure or term coextensive with that of Judge Spencer." (2) The words "term of office" do not refer to the incumbent or incumbency in the office—those words refer to the tenure or duration of the office. Jameson v. Hudson, 82 Va. 282. (3) The word "term" has no application to appointive office held at the pleasure of the appointing power. Mechem on Public Officers, sec. 385; Speed v. Crawford, 3 Met. (Ky.) 207; Field v. Malster, 41 Atl. (Md.) 1088. (4) Where no time is definitely fixed for the beginning of the term, the term will begin at the date of the appointment. Mechem on Public Officers, sec. 386; State ex rel. v. Williams, 222 Mo. 268. (5) The mandate of the statute is that words in the statute must be construed in their ordinary sense. Sec. 8057, R. S. 1909. This court will not undertake to construe a statute contrary to the plain intendment of the words used. Henry v. Evans, 97 Mo. 47; State ex rel. v. County Court, 128 Mo. 427; Smith v. Railroad, 143 Mo. 38; State ex rel. v. Riley, 203 Mo. 187.

*Culver & Phillip* for respondent.

(1) The words "during the term of the judge appointing him" mean the time actually served by the judge, and not the time for which he was elected. State ex rel. v. Smith, 87 Mo. 158; Silver v. Magruder, 32 Md. 397; Trial of Andrew Johnson, vol. 2, p. 194; Ib., vol. 3, p. 322. (2) The authorities, defining the words "term of office," cited by informant, are not in point. (3) Official terms should not be extended beyond the time clearly defined, but rather shortened by

implication. 23 Am. & Eng. Ency. Law, p. 409; Mc-chem on Public Officers (Ed. 1890), par. 390; 29 Cyc. 1396; Wright v. Adams, 45 Tex. 134; Smith v. Bryan, 100 Va. 199; People v. Palmer, 154 N. Y. 133; People v. Brenham, 3 Cal. 477. (4) It is not the policy of the law in this State to make the term of the appointee co-extensive with the term for which the officer appoint-ing him was elected. State ex rel. v. Gordon, 238 Mo. 168; Hartman v. Adamson, 101 Mo. App. 119. (5) The act of Judge Eastin in appointing Ford for a term of six years was illegal.

GRAVES, J.—The facts of this case are so suc-cinctly, briefly and fairly stated by counsel for re-spondent McKay, that I adopt their statement. Such statement reads:

"This is a proceeding by *quo warranto*, brought by the Attorney-General against William M. McKay, respondent, to require said respondent to show by what authority he holds and exercises the duties of the office of official stenographer of Division No. Two of the Circuit Court of Buchanan county, Sixth Judi-cial Circuit.

"The undisputed facts as disclosed by the infor-mation, and answer and return are as follows:

"At the general election held in November, 1908, one Lucien J. Eastin was duly elected judge of Divi-sion No. Two of said court for a term of six years, and duly qualified and entered upon the discharge of his duties on January 1, 1909, following his election. On the fourth day of January, 1909, Judge Eastin duly appointed Harry K. Ford as official stenographer of said court, and said Ford on said date qualified as such stenographer and from said date to the fourth day of January, 1913, has been the qualified and acting offi-cial stenographer of said court.

"On January 3, 1911, Judge Eastin resigned his office, and on said date William K. Amick was ap-

pointed as his successor by the Governor. Judge Amick qualified and entered upon the discharge of his duties and so continued until the 31st day of December, 1912, when judgment of ouster was entered against him in a proceeding similar to this in this court. During the time Judge Amick served as such judge the said Ford continued to serve as stenographer without any appointment other than that made by Judge Eastin.

"At the general election held on November 6, 1912, Charles H. Mayer was elected to said office, to fill the vacancy caused by Judge Eastin's resignation, to hold for the remainder of the term ending on December 31, 1914, and his right to the office for the time stated was confirmed by this court in the case above mentioned.

"On the first day Judge Mayer held said court, to-wit, January 4, 1913, he appointed the respondent, McKay, as official stenographer for said court, duly entered of record in said court an order to that effect, and the respondent duly qualified and since said time has been acting as such stenographer.

"The case is for determination on the motion filed by information for judgment on the pleadings."

The statute under which appointments are made in Buchanan county, reads:

"For the purpose of preserving the record in all cases for the information of the court, jury and parties, and for expediting the public business, the judges of the circuit courts of the State of Missouri, for counties having a population of more than forty-five thousand and less than one hundred and fifty thousand inhabitants, shall appoint an official stenographer for each court or each division of said circuit court, who shall be well skilled in the art of stenography, and shall have had at least three years' actual practice in court reporting. Such stenographer shall be a sworn officer of the court, and shall hold his office during the

term of the judge appointing him." [R. S. 1909, sec. 11244.]

The last clause of this section "and shall hold his office during the term of the judge appointing him" is the real bone of contention. Other side suggestions, if necessary, will be noted in the course of the opinion.

I.  That there is an ambiguity in this statute is clearly evidenced by the well defined diverse views of contending counsel, as well as the diverse views of members of this court. We usually do not differ where the legislative act is clear and unambiguous. This statute is uncertain, indefinite and ambiguous. In such case there is at least one well defined preliminary rule of construction. This preliminary rule is stated in 23 American and English Encyclopedia of Law, p. 409, thus:

**Ambiguous Statute.**

"If a statute or constitutional provision fixing or limiting the duration of an official term is ambiguous, that interpretation should be followed which limits the term to the shortest time."

So too 29 Cyc. 1396 announces the rule thus:

"Where the statute fixing the term is uncertain, that interpretation should be followed which limits the term to the shortest period."

The same idea is expressed by Mechem on Public Officers (Ed. of 1890), paragraph 390, in this language: "Where a constitutional provision prescribing the term of a public officer is uncertain or doubtful in its construction, that interpretation will be adopted which limits the term to the shortest time." This rule may have some application to the case at bar as we proceed later to discuss this statute. It is at least a sidelight in the construction of a statute which we think is ambiguous as to the actual term of the office attempted to be created. The language of the statute is such that we must try to seek the legislative intent from its face. This act we take next.

II.  We come now to the statute itself.  It says "and shall hold his office during the term of the judge appointing him."  Does this mean that the stenographer goes out when the judge making the appointment goes out, or does it mean that the stenographer holds for the term for which the appointing judge was elected?

**Term of Office: Court Stenographer.**

Judges of the circuit court are elected for a term of six years, and if the statute means that his appointment holds for that term, irrespective of the holding by the judge himself, the respondent has no standing, here.  If, on the other hand, the statute means that the stenographer shall only hold so long as the appointing judge holds, then McKay is right and the relator wrong.  What is meant by "the term of the judge appointing him" as used in the statute?  An answer solves the case.  To my mind one's term of office does not necessarily refer to the time, in years, for which he was elected.  That elective term may be sooner terminated.  Death may terminate it.  Resignation may terminate it.  Removal may terminate it.  However the elective term may be terminated, in ordinary parlance we speak of the time actually served, as "the term" of the particular officer.  That which remains we speak of as "the term" of his legal successor.  Had the Legislature desired to fix the term of the stenographer more definitely it no doubt would have done so.  That body knew what we all know, that the court stenographer is much more closely connected with the judge than any other official.  He receives the dictations and writes the official and other letters of the judge.  The judge must have confidence in him, or he is at a loss to know what to do in signing bills of exceptions wherein there is a dispute.  In fact, above all others, the stenographer is and should be closer to the judge than any other court official.  These things the lawmakers knew when they enacted the law now up for construction.  The lawmaking body never intended

that there should be a court stenographer not in full accord with the judge then presiding over the court. The language used may be ambiguous and of doubtful meaning, when read in cold type, but the intent to my mind is plain. That intent was that the stenographer appointed by any individual judge should only serve so long as that judge served. If by death "his term" was ended, the stenographer appointed by him went with him. So too in case of resignation or removal. In this case when Judge Eastin resigned, his, Eastin's, term expired. He had no further term of service. With his term, likewise expired the term of his stenographer, Mr. Ford. If Ford was permitted to hold on longer it was a pure matter of grace, and not a matter of law. Judge Amick could have appointed his successor. Because Judge Amick did not see fit so to do, does not preclude Judge Mayer from naming his own stenographer. The legal vacancy was there when Judge Mayer assumed office. This statute never contemplated that the sitting judge should not have a stenographer of his own choosing. This, without reference to what his predecessor in office had done during "the term" of his service.

Counsel for respondent have carefully collected a mass of correlative matter showing that the trend of legislative thought is along the line above suggested. We have compared the statutes and feel that counsel speak correctly. They say:

"The Legislature of this State has been careful in nearly every instance to give the appointing power the right to remove an appointee at pleasure.

"This is true of the assistants and appointees of the Attorney-General. [Sec. 971.]

"It is also true of the assistants, clerks, and stenographers appointed by the circuit attorney. [Sec. 980.]

"Of the assistant prosecuting attorneys. [Secs. 1028-1033.]

. ''Of the bank commissioner's clerks and stenographers. [Sec. 1074.]

''Of all officers and employees appointed by the managers of State Institutions except superintendents. [Sec. 1387.]

''Of game commissioners' deputies. [Sec. 6566.]

''Of the food and drug commissioners' deputies and clerks. [Sec. 6608.]

''Of the superintendent of insurance. [Sec. 6880.]

''Of clerks of justices of the peace. [Sec. 7620.]

''Of the deputies of constables. [Sec. 7631.]

''Of assistant State librarians. [Sec. 8158.]

''Of stenographers of judges of the Supreme Court. [Sec. 11267.]

''Of stenographers of courts, having jurisdiction of felonies in counties or cities having over 100,000 inhabitants. [Sec. 11259.]

''Of stenographers of courts in counties and cities having 350,000 inhabitants or more. [Sec. 11231.]

''And it has been declared to be the law in this State that where no provision is made as to the term of tenure of an appointive officer, he holds his appointment at the pleasure of the appointing officer. [State ex rel. v. Gordon, 238 Mo. 168; Horstman v. Adamson, 101 Mo. App. 119.]

''It would, therefore, be strange indeed if the Legislature had made an exception in this respect and made the stenographer not only not subject to removal by the appointing judge but fixing his term absolutely at six years.''

In the construction of this ambiguous statute these are glaring facts which we must meet. The trend of all of these statutes is to give the appointing power the right to at least designate the appointee. Not only so, but the trend is, that the subordinate must be one selected by the acting chief, who has the appointing power. In other words the man serving un-

der a head of a department must be one in full sympathy with the head. There is no closer relationship than the one between the judge and his stenographer. The Legislature never intended by this statute to foist the stenographer appointed by one judge upon his successor in office, it matters not how that succession was occasioned.

This law came under review in the case of State ex rel. Tilley v. Ford, 41 Mo. App. l. c. 127. Discussing this law, GILL, J., said:

"For the purpose of expediting the business of the courts it is there provided, in section 1 of the act, that, 'The judges of the circuit courts of the State of Missouri, for counties having a population of more than forty-five thousand and less than one hundred and fifty thousand inhabitants, shall appoint an official stenographer for each court, or each division of said circuit court, who shall be well skilled in the art of stenography, and shall have had at least three years' actual practice in court reporting. Such stenographer shall be a sworn official of the court and shall hold his office during the term of the judge appointing him.' From the reading of this section it seems clearly the intention of the Legislature: First, to create the office of court stenographer, and, secondly, to limit the occasion proper for his appointment to counties, where circuit courts are held, having a population of not less than forty-five thousand or more than one hundred and fifty thousand. It is equally clear that the design was to have as many of these officers as there were, or should be, circuit courts, or divisions thereof, in said counties, and, further, in each case that such court stenographer be commissioned by the individual judge who may at the time preside over such court, or over such division thereof."

It is the last clause of the quotation that has special significance here—i. e. "in each case that such court stenographer be commissioned by the *individual*

*judge who may at the time preside over such court, or over such division thereof.''* It is true that the question of the stenographer's term of office was not directly at issue in this case, but the opinion shows the mental attitude of that court as to the construction which should be given the statute. The idea expressed is that the stenographer should be an appointee of the judge at the time presiding over the court. Case law upon the question is sparse, because of the peculiar and ambiguous wording of our statute. We are thoroughly impressed with the idea that the clause of the statute "shall hold his office during the term of the judge appointing him" means the term actually served by such appointing judge, rather than the term of six years for which he may have been elected.

Some sidelights may be found in the impeachment trial of President Andrew Johnson. At that time the law relating to Cabinet officers provided that they "shall hold their office respectively for and during the term of the President by whom they have been appointed, and for one month thereafter." Edwin M. Stanton was appointed Secretary of War by President Lincoln during Lincoln's first term. No reappointment was made for the second term of President Lincoln, and, as we know, he was murdered shortly after the beginning of his second term. Andrew Johnson under the Constitution succeeded to the Presidency and shortly thereafter removed Stanton and appointed a successor. This act was one charge in the bill of impeachment. In giving his opinion upon the case against Johnson, Senator Fessenden, Vol. 3, pp. 20 and 21, of "Trial of Andrew Johnson" thus clearly states the situation:

"Again, does Mr. Stanton come within the proviso? What is the term therein fixed and established for the Secretary of War? Specifically, the term of the President by whom he was appointed, and one month thereafter. He was appointed by President Lin-

coln, and the term of President Lincoln existing at the time of his appointment expired on the 4th of March, 1865. Can any one doubt that had a law been in existence on that day similar to that of March 2, 1867, Mr. Stanton would have gone out of office in one month thereafter? The two terms of Mr. Lincoln were as distinct as if held by different persons. Had he been then reappointed by Mr. Lincoln, and confirmed, and a law similar to that of March 2, 1867, been then in existence, is it not equally clear that he would have again gone out of office in one month after the expiration of Mr. Lincoln's second term? If so, the only question would have been whether Mr. Lincoln's term expired with him, or continued notwithstanding his death, until the 4th day of March, 1869, although he could no longer hold and execute the office, and although his successor, elected and qualified according to all of the forms of the Constitution, was, in fact and in law, President of the United States. How could all that be, and yet that successor be held to have no term at all? To my apprehension, such a construction of the law is more and worse than untenable.

"The word 'term'' as used in the proviso, when considered in connection with the obvious design to allow to each person holding the presidential office the choice of his own confidential advisers, must, I think, refer to the period of actual service. Any other construction might lead to strange conclusions. For instance, suppose a President and Vice President should both die within the first year of the term for which they were elected. As the law now stands, a new election must be held within thirty-four days preceding the first Wednesday of December then next ensuing. A new term of four years would commence with the inauguration of the new President before the term for which the preceding President was elected had expired. Do the heads of departments appointed by that preceding President hold their offices for three years of the

term of the new President and until one month after the expiration of the term for which such preceding president was elected? Such would be the consequence of giving to the word 'term' any other meaning than the term of actual service. It must be evident, therefore, that the word 'term' of the President, as used in the proviso, is inseparable from the individual, and dies with him.''

In the same volume, p. 322, Senator Trumbull, among other things said:

''The clause of the Constitution which declares that the President shall hold his office during the term of four years does not mean that the person holding the office shall not die, resign, or be removed during that period, but to fix a term or limit during which he may, but beyond which he cannot, hold the office. If he die, resign, or be removed in the meantime, manifestly the term, so far as he is concerned, has come to an end. The term of the presidential office is four years, but the Constitution expressly provides that different persons may fill the office during that period, and in popular language it is called the term of the person who happens for the time being to be in the office. It is just as impossible for Mr. Stanton to now serve as Secretary of War for the term of the President by whom he was appointed as it is for Mr. Lincoln to serve out the second term for which he was elected. Both the presidential term of the President who appointed Mr. Stanton and the person who made the appointment have passed away, never to return; but the presidential office remains, filled however, by another person and not Mr. Lincoln.''

So we say in this case that the law of Missouri contemplates an elective term of six years for a circuit judge, but such term for different reasons may be filled by one or more persons. We also say that the official term of the stenographer for such judge is the term of actual service of the appointing judge,

and not the elective term of six years. Such construction to my mind comports with the general spirit of all our statutes bearing upon similar appointments and is founded in good reason. Under these views the writ should be denied. It is so ordered. *Woodson, Bond* and *Faris, JJ.,* concur; *Lamm, C. J., Brown* and *Walker, JJ.,* dissent in an opinion by *Brown, J.*

## DISSENTING OPINION.

BROWN, J.,—I dissent from the views of my learned brother GRAVES in the majority opinion for the following reasons:

The law which defines the term for which Judge Eastin possessed the power to appoint an official stenographer is that part of section 11244; Revised Statutes 1909, which reads as follows:

"Such stenographer shall be a sworn officer of the court, and shall hold his office *during the term of the judge appointing him.*"

Respondent earnestly contends that the appointment of Ford only authorized the latter to occupy the office of official stenographer during the period of time that Eastin actually held the circuit judgeship, and that the resignation of Eastin, *ipso facto,* vacated the office of official stenographer. In support of this contention he cites: Impeachment of Andrew Johnson, vol. 2, p. 194; State ex rel. v. Gordon, 238 Mo. l. c. 181; State ex rel. Tilley v. Ford, 41 Mo. App. 122, l. c. 128; Silver v. Magruder, 32 Md. l. c. 397.

The impeachment case involved the right of President Johnson to remove a Cabinet officer appointed by President Lincoln at the beginning of Lincoln's first term. The full term of the Cabinet officer so removed had expired under the express provision of the statute which authorized his appointment, and he had not been re-appointed by President Lincoln upon the election of the latter to a second term.

State ex rel. v. Gordon, supra, determines the fact, and only the fact, that a person holding office at the pleasure of the Governor has no ''term of office'' within the meaning of that provision of our State Constitution which prohibits the increase of salaries of officers during their ''official terms.''  It was a suit to collect the salary of an officer, and there was no contention that the officer claiming the salary was not lawfully appointed to the office for which he demanded the salary.

The case of State ex rel. Tilley v. Ford, 41 Mo. App. 122, was an action of *quo warranto* to oust Tilley from the office of official stenographer of Division No. Two of the Buchanan Circuit Court on the ground that Tilley having been appointed official stenographer of the circuit court of Buchanan county prior to the creation of Division No. Two of said court, the Legislature was without power to authorize the appointment of another stenographer in that county.  In that case it was correctly ruled that having created the office of official stenographer the General Assembly had the power to provide for the appointment of as many additional stenographers as it saw fit, even though the appointment of additional stenographers decreased the income of relator.  That action did not, in any way, involve the issue of the duration of the term of an official stenographer of Buchanan county who had been duly appointed.

The case of Silver v. Magruder, 32 Md. 387, is also relied upon by respondent.  In that case the Governor of Maryland, whose term was fixed by the Constitution at four years, appointed a State Librarian in the middle of his term under a statute which provided that the librarian should hold office ''during the term of the Governor by whom he shall have been appointed.''  The librarian so appointed contended that he was entitled to a full four-year term, but the Supreme Court of Maryland ruled that he must retire at the end of the

term of the Governor who appointed him. The phraseology of the Maryland statute prescribing the term of the librarian in that State is very similar to the statute we are now called upon to construe, but there was no contention in that action that the librarian's term had been terminated by the removal, resignation or death of the officer appointing him. In fact, the Governor who appointed him served out his full term.

It will be observed that neither the issues nor the facts in the cases cited are similar to those upon which we are now called upon to pass judgment; consequently, those cases do not afford much light in determining how this case should be decided.

Respondent calls attention to the fact that the General Assembly has made the terms of many other court stenographers and other appointive officers terminate at the pleasure of the particular officer appointing them, and insists that section 11244 should be so construed as to make its provisions harmonize with other statutes relating to the appointment and discharge of other stenographers; that the work of a court stenographer is so closely interwoven with the duties of the court that the court appointing such stenographer should always have the power of removal at pleasure.

The latter argument is quite logical and might, with equal propriety, be applied to the clerks of courts who are elected by the people. The General Assembly must have recognized the force of the argument put forth in this case by respondent's learned counsel when it enacted section 11231, Revised Statutes 1909, relating to the removal of stenographers in circuits having over 350,000 inhabitants. The last named statute was enacted in 1887 (Laws 1887, p. 145), while the law now in judgment (Sec. 11244) was enacted in 1883 (Laws 1883, p. 59). This section seems to have been the second law enacted in Missouri making provision for court stenographers. The first of such laws was

enacted in 1881, permitting the appointment of stenographers for certain criminal courts and providing that such stenographers should be appointed from month to month at the pleasure of the court. If the law which we are now called upon to construe (section 11244, supra) has a doubtful or ambiguous import, we may well consider other enactments relating to the same subject to ascertain the true legislative intent, but where a statute contains no ambiguous or repugnant provisions the rule is otherwise. "The whole doctrine applicable to the subject may be summed up in the single observation that prior acts may be resorted to to *solve,* but not to *create,* an ambiguity." [2 Lewis' Sutherland on Statutory Construction (2 Ed.), p. 856.]

We are at last forced to fall back upon the "plain, or ordinary and usual" meaning of the words "shall hold his office during the term of the circuit judge appointing him." [Sec. 8057, R. S. 1909.] We have not been able to discover any ambiguity in the word "term" as applied to the tenure by which Judge Eastin held the office of circuit judge on January 4, 1909. The Constitution had distinctly marked out the duration of his term at six years. [Constitution 1875, art. 6, sec. 25.] The General Assembly must have known of that provision of the organic law when it enacted section 11244, making the tenure of the stenographer equal to that of the judge appointing him.

If it had been the legislative desire to give the official stenographer of the circuit court of Buchanan county an uncertain or contingent tenure of office, the General Assembly was certainly very unfortunate in the language it used to accomplish that result. The word "term," when used to describe the tenure or time during which an appointee may hold an office, has been held by this court to carry no ambiguous import, but to embrace and mean the *fixed* and *definite* time prescribed by law for holding such office. [State ex rel. v. Stonestreet, 99 Mo. 361, l. c. 372, which last

named case is cited with express approval by this court, In Banc, in State ex inf. v. Williams, 222 Mo. l. c. 278.] The time-honored maxim that "that is sufficiently certain which can be made certain" sustains the contention of relator in this case.   [6 Cyc. 844.]

Mr. Mayer, the newly elected circuit judge of Buchanan county, can undoubtedly remove Mr. Ford (Judge Eastin's appointee) from the office of official stenographer, should Ford, upon a hearing, be found guilty of any of the misconduct denounced by section 10204, Revised Statutes 1909.   [State ex rel. v. Slover, 113 Mo. 202.]

For the reasons before recited, I respectfully dissent from the views expressed in the majority opinion.

*Lamm, C. J.*, and *Walker, J.*, concur in the views expressed in this dissent.