The opinion of the court was delivered by
Brewer, J.:
This is an original case in this court, brought for the purpose of testing the title of defendant to the office of probate judge of Barton county. To the petition defendant has interposed a demurrer, and the case is now submitted to us upon such demurrer. The facts as alleged in the petition, and admitted by the demurrer, are as follows: In 1880, one E. L. Chapman was duly elected and qualified as probate judge of Barton county. On the 3d day of October, 1881, he wrote and forwarded to the governor an unconditional resignation of such office. Such resignation reached the governor’s office on October 4th, and the governors hands, October 8th, and on the same day the governor wrote to Judge Chapman:
“Your resignation has just been received, and is hereby accepted, and to take effect on appointment- of your successor.”
*443 This letter was received by Judge Chapman ou the 9th of October. About the first of November, 1881, the defendant was appointed by the governor probate judge, and immediately qualified and entered upon the duties of the office. Prior to the November election of 1881, each of the three political parties in Barton county made a nomination for probate judge. The sheriff in his proclamation of election, notified the electors that a probate judge was to be elected, and nearly every one who voted at that election, voted for one or the other of the candidates. The relator received a majority of the votes cast at that election, received a certificate of election, and qualified in due time. He then demanded possession of the office from the defendant, who refused to surrender, claiming that he was entitled to hold the office during the year 1882. Thereupon this action was commenced. The election in November, 1881, was held on the 8th day of November. Intermediate the 9th of October and the time the defendant qualified and entered upon the duties of his office, Judge Chapman, as probate judge, performed several official acts, but in affixing his signature he did so in this form: “ E. L. Chapman, acting probate judge.” The relator had been, prior to the election, a justice of the peace, but did not act as such officer from and after the day of the election;- and on the 24th day of November he forwarded his resignation to the governor, which resignation was accepted, and a successor appointed and duly qualified. The case therefore turns upon this question: When did the vacancy occur in the office -by ■the resignation of Judge Chapman? Section 11, article 3, constitution of the state, contains this language: “In case of vacancy in any judicial office, it shall be filled by appointment of the governor, until the next regular election which shall occur more than thirty days after such vacancy shall have happened:”
Section 12 reads: “All judicial officers shall hold their offices until their successors shall have qualified.”
Now it is claimed by plaintiff that Judge Chapman’s resignation took effect October 3d, because upon that day an abso *444 lute and unconditional resignation was by him transmitted to the governor, the officer entitled to receive it; and this upon the theory that the incumbent of a public office has an absolute right to lay aside its duties and resign the office at any time, and that no acceptance of such resignation is necessary. Plaintiff further contends that if there be any doubt as to this, the resignation was complete and took effect on October 8th, the day it was received and acknowledged by the governor. On the other hand, it is contended by the defendant that acceptance, or something equivalent thereto, is necessary to perfect a resignation; that a party who has once accepted an office and entered upon its duties has not the absolute right at his own pleasure to abandon its duties and resign the office; that the public are interested as well as the individual incumbent; and that as acceptance or its equivalent is necessary to perfect a resignation, when the acceptance specifies the time at Which it will take effect, until such time the resignation is not complete. The law as stated by the defendant is correct. The public have the right to command the services of any citizen in any official position which they may designate; and he may not, after entering upon the duties of the position, abandon them at his option. It is true that this, as a practical question, will seldom arise, and is of little moment; for in this country there are so many willing and eager to serve the public in official positions that the difficulty will always be to find offices for the aspirants rather than to find incumbents for the offices. Still, emergencies may arise in which the absolute and superior right of the public must be recognized. In times of peace the ranks of the army are supplied by voluntary enlistment, but in times of war and great national danger compulsory military service may be and has been required. So also service as a juror, who is a quasi officer, is compulsory, and the individual citizen may not decline at his pleasure. So a party elected or appointed to any township office, who shall refuse or neglect to serve therein, unless unable from disease or other infirmity to discharge its duties, is liable to a fine of $25. (Comp. Laws of 1879, p. 985, *445 §46.) It is true there are some authorities in this country which seem to recognize the absolute right of the office-holder to resign his office, and hold that the resignation is complete without acceptance. These authorities are collected by plaintiffin his brief, and are The United States v. Wright, 1 McLean, 509; People v. Porter, 6 Cal. 26; State, ex rel., v. Clark, 3 Nev. 566; State v. Fitts, 49 Ala. 402; Gates v. Delaware, 12 Iowa, 405. See also Bunting v. Willis, 27 Gratt. (Va.) 144.
The opposite view is, however, recognized in other states, as will appear from the following authorities: Hoke v. Henderson, 4 Dev. (N. C.) L. 1; Van Orsdall v. Hazard, 3 Hill (N. Y.) 243; State v. Ferguson, 31 N. J. L. 107. In the case from North Carolina, supra, Chief Justice Ruffin, in speaking for the court, said:
“An officer may certainly resign, but without acceptance his resignation is nothing, and he remains in office. It is not true that an office is held at the will of either party. It is held at the will of both. Generally resignations are accepted; and that has been so much a matter of course with respect to lucrative offices as to have grown into a common notion that to resign is a matter of right. But it is otherwise. The public has a right to the services of all the citizens, and may demand them in all civil departments as well as in the military; hence there are on our statute book several acts to compel men to serve in offices. ■ Every man is obliged upon a general. principle, after entering upon his office, to discharge the duties of it while he continues in office, and he cannot lay it down until the public, or those to whom the authority is confided, are satisfied that the office is in a proper state to be left, and the officer discharged.”
See also the case of London v. Headen, 76 N. C. 72.
This question has recently been examined by the supreme court of the United States, in a case which arose in the state of Michigan, (Edwards v. United States, 103 U. S. 471,) in which the question is examined and authorities reviewed at some length by Mr. Justice Bradley, and the conclusion of the court is unanimous that, where the common law obtains, and in the absence of express statute, acceptance is necessary to perfect a resignation. In this case, citing the English authorities, he *446 shows that the unquestioned rule of the common law was in accordance with the conclusion reached by the court. In our own state, by express statute, (Comp. Laws 1879, p. 1013, §3,) “the common law, as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, shall remain in force in aid' of the general statutes of this state.” See also Railway Co. v. Nichols, 9 Kas. 252. So far as any special provisions of our statutes are concerned, they suggest no departure from the common-law doctrine, and are very like the provisions of the Michigan statutes which are referred to and considered by the supreme court of the United States in the opinion just cited. It follows from these considerations, that the resignation forwarded by Judge Chapman did not take effect absolutely at the time it was forwarded, but required acceptance on the part of the governor, and this acceptance being .to take effect upon the appointment of a successor, the vacancy was not absolute until such appointment was made. The demurrer must therefore be sustained, and judgment entered for the defendant.
All the Justices concurring.