(No. 23777.—

THE PEOPLE *ex rel.* Elizabeth McCarthy, Appellant, *vs.*
EDWARD J. BARRETT, Auditor of Public Accounts, *et al.*
Appellees.
*Opinion filed December 16, 1936.*

STONE, J., dissenting.

F. K. DUNN, for appellant.

OTTO KERNER, Attorney General, (MONTGOMERY S.
WINNING, of counsel,) for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:
This was a proceeding by *mandamus* seeking to compel payment of $270 alleged to be due relatrix as official
shorthand reporter under an appointment made by Judge

Craig VanMeter, formerly a judge of the circuit court of the fifth circuit, now resigned. The circuit court denied relief, and the cause is brought here by direct appeal because of the interest which the State has in the matter.

There are no disputed facts. Craig VanMeter, then a judge of the circuit court, on October 9, 1933, appointed the relatrix official shorthand reporter in accordance with the terms of the statute hereinafter mentioned. Thereafter, in the month of December, 1935, Judge VanMeter presented his written resignation to the Governor, who accepted the same, and both the resignation and acceptance were filed in the office of the Secretary of State. On January 1, 1936, VanMeter ceased to act as circuit judge, and from and after that date has been engaged in the general practice of law as attorney in the courts of the circuit where he formerly acted as judge. Although the relatrix has performed no duties as shorthand reporter since January 1, 1936, she has held herself ready to do so but has been refused any salary, the State Auditor, on advice of the Attorney General, having ruled that the resignation of Judge VanMeter terminated her right to hold the office of official shorthand reporter. The appellant contends that notwithstanding Judge VanMeter's resignation he still holds his office as judge, because the constitution provides that he shall do so until his successor shall be qualified, and that the right to resign is not absolute, nor is a resignation effective, notwithstanding an acceptance, until the qualification of a successor. From this it is argued that the court reporter's right to receive a salary follows the legal title to the office of circuit judge, and that when an office such as this is created by statute it must continue until terminated in accordance with the statutory provisions; that in this case it can only be terminated by Judge VanMeter's successor issuing a revocation of the appointment or by expiration of the term for which Judge VanMeter had been elected.

The statute of 1887 in regard to court reporters provided that they should be appointed by the judges of the circuit courts for their respective courts. In 1927 this was superseded by a new act, which provided that each of the judges should appoint one reporter. The section in question is as follows: "That each of the several judges of the circuit, superior and city courts in this State, be and they are hereby, authorized to appoint one official shorthand reporter, who shall be skilled in verbatim reporting, and who shall have been a *bona fide* resident of the State of Illinois for one year, and whose duties shall be as hereinafter specified. * * * Such appointment shall be in writing and shall be filed in the office of the Auditor of Public Accounts, and continue in force until revoked by the judge making said appointment. The reporter so appointed shall hold his position during the pleasure of the judge so appointing him, not, however, to extend beyond the time the judge making such appointment shall be elected for: *Provided, however,* that in the case of the absence or disability of said reporter so appointed, the presiding judge may appoint any other competent reporter to act in his place during such absence or disability, which said substitute shall be paid by said official reporter for his said services," etc. (State Bar Stat. 1935, chap. 37, par. 156). Section 12 of article 6 of the constitution provides that the terms of office of judges of the circuit court shall be six years, and section 32 of the same article provides: "All officers provided for in this article shall hold their offices until their successors shall be qualified."

Counsel for appellant, who has presented us with an exhaustive brief, relies principally upon the above two provisions of the constitution and upon the case of *People* v. *Supervisor of Barnett Township,* 100 Ill. 332, and other cases similar thereto, which will be noticed later in this opinion. It is his argument that there are two questions

presented for decision, and that if either of them is answerable in the negative his client must prevail. In his own language these questions are as follows: (1) Under the statute creating the office of the official shorthand reporter, does the resignation of the judge who has appointed an official shorthand reporter without having revoked the appointment, terminate the incumbent's tenure of office? (2) Under the constitutional provision that "all officers provided for under this article shall hold their offices until their successor shall be qualified," does the resignation of a circuit judge tendered to the Governor and filed in the office of the Secretary of State, with the Governor's acceptance of it, create a vacancy in the office of the judge before the qualification of the judge's successor?

Counsel's major premise, stated substantially in his own words, is, that although Judge VanMeter has resigned and his resignation been accepted by the Governor, nevertheless he still holds the office of circuit judge because the constitution requires that he shall so hold his office until his successor shall be qualified. From this he argues, and apparently takes it as a necessary *sequitur,* that relatrix remains in office as the judge's shorthand reporter. In support of his contention that Judge Van-Meter is still a circuit judge, he relies upon *People* v. *Supervisor of Barnett Township, supra,* and other similar cases from various jurisdictions, and for his minor premise that the relatrix still remains the judge's shorthand reporter he relies upon a certain construction of the statute, with which we are unable fully to agree.

Questions as to the right of a public officer to resign his office, whether or not such resignation must be accepted, and what the effect thereof is as to creating or not creating a vacancy in the office, have proved troublesome to many courts, and the extensive briefs filed in this cause well illustrate the wide variety, and in some cases apparently irreconcilable, views on the subject. It would re-

quire a text book rather than an opinion to review all of these cases, and we shall not attempt to do so. The interested student may find ample annotations on the subject in any series of selected cases. (23 L. R. A. 681; 12 L. R. A. (n. s.) 1010; 16 id. 1058; 19 id. 39; 95 id. 215.) We believe that the major portion of these cases, if not all of them, may be reconciled upon simple principles, and that the conflict among them is apparent rather than real. These cases fall into general classifications, such as whether or not the right to resign exists at all, whether or not the resignation must be accepted, whether it may be withdrawn before acceptance, whether or not it creates a vacancy in the office resigned, and whether the duties of the office may be performed voluntarily or by compulsion after resignation. We believe that our own constitution, statutes and prior decisions furnish us a sufficient guide for the decision of the present case without recourse to the hundreds of outside decisions, and we believe that the decision we have arrived at will be found in harmony with the general thought and spirit of the decided cases.

We first note that our constitution contains no express denial of the right of a public officer to resign. It is true, as urged by the appellant, that the constitution does provide that all officers shall hold their offices until their successors shall be qualified. This, as we pointed out in *People* v. *Supervisor of Barnett Township, supra,* in construing a statute containing similar words, shows an intention and policy of the law that the public convenience shall not suffer from a vacancy. It is the public convenience, however, that is to be served and not the private ends of some particular individual, and had the constitution intended to absolutely prevent the happening of any vacancy, there would undoubtedly have been provision for some form of automatic succession in the event of death, departure from the jurisdiction, or other event certain to

happen which would create an undeniable vacancy. In other words, not even the constitution can prevent vacancies happening through death, and had it been the intention of those who drafted that instrument that no vacancy might occur under any circumstances, certainly definite provisions would have been made for the happening of such contingencies.

It is said that at common law there was no right to resign a public office; that such an office was a private burden and a public trust, which could not be laid down by the officeholder. In discussing this point the Supreme Court of the United States, in *Edwards* v. *United States,* 103 U. S. 471, said: "An office was regarded as a burden which the appointee was bound, in the interest of the community and of good government, to bear. And from this it followed of course that, after an office was conferred and assumed, it could not be laid down without the consent of the appointing power. This was required in order that the public interest might suffer no inconvenience for the want of public servants to execute the laws. * * * In this country where offices of honor and emolument are commonly more eagerly sought after than shunned, the contrary doctrine in regard to such offices and, in some States, with regard to offices in general, may have obtained; but we assume that the common law rule prevails unless the contrary be shown." The words "without the consent of the appointing power," in the foregoing quotation, are not without significance. It can hardly be doubted that a public officer, even at common law, could resign with the king's consent.

Not only has the right to resign a public office long been recognized and accepted by common consent in this State, but it has been fully recognized by statute and by decisions of this court. It is provided by paragraph 137 of chapter 46, (State Bar Stat. 1935, p. 1469,) that resignations by elective officers shall be made to the officer,

court or county board authorized by law to fill a vacancy in such office by appointment or to order an election to fill such vacancy. The next succeeding paragraph provides that every elective office shall become vacant on the happening of eight specified events: (1) The death of the incumbent; (2) his resignation; (3) his becoming insane; (4) his ceasing to be an inhabitant of the State, or, if the office is local, his ceasing to be an inhabitant of the district, county, town or precinct for which he was elected; (5) his conviction of an infamous crime or of any offense involving a violation of official oath; (6) his removal from office; (7) his refusal or neglect to take his oath of office, or to give or renew his official bond, or to deposit or file such oath or bond within the time prescribed by law; and (8) the decision of a competent tribunal declaring his election void. Numerous other statutory provisions, which it is unnecessary to notice here, provide specifically for the resignations of various officers and as to whom they are to be made. The statute is silent as to whether or not a resignation must be accepted, and it is not necessary to consider that point in this opinion, because in this case the resignation was accepted by the Governor.

Resignation by direct affirmative act pursuant to statute was recognized and sustained by this court in *Pace v. People,* 50 Ill. 432, which case, it will be noted, was decided prior to the adoption of our present constitution and presumably was in contemplation of the framers of that instrument. In that case a county superintendent of schools addressed a resignation and presented it to the county court. It was placed on file with the clerk by direction of the court but there was no formal court order entered thereon. The officer attempted afterwards to withdraw his resignation, but it was held that he could not do so, the court saying that the resignation having, in fact, been received by the court and handed to the clerk to be placed on file, was vir-

tually accepted. Constructive resignations by inconsistent acts have also been recognized by this court and so far as we know are never questioned. Thus, in *People* v. *Hanifan*, 96 Ill. 420, an alderman accepted an office inconsistent and incompatible with the duties of the one previously held, and it was adjudged that such action on his part amounted to an implied resignation. Mr. Justice Scott said: "An officer in a municipal corporation may of course resign his office, or he may abandon it by removal or otherwise, which will be treated in law as an implied resignation. * * * One of the modes by which a member of a corporation may be said to impliedly resign his office, is by being elected to and accepting an office incompatible with the duties of his former office." In the recent case of *Fekete* v. *City of East St. Louis*, 315 Ill. 58, the plaintiff sought to recover his salary for two years as city attorney for East St. Louis while he had been absent in the United States army in the recent World War. While in the government service he had been appointed and commissioned as a captain in the United States army, that being an office of profit under the United States. It was held that his acceptance of this commission amounted to a resignation of his previous office, and he was denied recovery. The case reviews authorities from other States in support of the main proposition. These decisions and the statutes above mentioned clearly indicate the existence of at least a limited right to resign a public office and might readily be supplemented by numerous decisions from other States. Other decisions of this court and the courts of other States indicate certain limitations upon the right to resign, and we shall therefore seek to determine what those limitations are.

In *People* v. *Supervisor of Barnett Township, supra,* the respondent was ruled to show cause why he should not be made a party to the suit and why an alias writ of *mandamus* should not be issued commanding him to perform the acts which his predecessor in office had been com-

manded to perform by a former writ in the case. It was urged in the return that the respondent had resigned his office of supervisor and his resignation had been accepted. His successor, though elected, had never qualified. This court sustained the argument of the relator, and held that where the rights of creditors are concerned the respondent could not be relieved from his office until after the election and qualification of a successor. Referring to the Township Organization act, which provided then, as now, that officers should hold their offices for a named period of time and until their successors should be elected and qualified, we said: "All this shows a significance in this provision, and denotes as the policy of our law that the public convenience shall not suffer from a vacancy in such public offices, but that the office shall ever be full, so that there will always be someone competent to perform the duty belonging to the office. If we were not to allow to this respondent the power, before his successor shall qualify, to perform the merely ministerial official act of signing these bonds, which this court has ordered his predecessor in office to perform, then this careful provision of the law that the officer shall hold his office until his successor is elected and qualified, will be denied effect, and be made nugatory." It will be observed that the foregoing language decided the issues and disposed of the case. The court then proceeded to use the following language, which is principally relied upon here: "No distinction in this respect is to be drawn between a resignation and the expiration of the time fixed for the holding of the office. A resignation ends the term of office, the same as the expiration of the time of the tenure of the office does, and no more effectually. The effect in either case is just the same. Whatever power there is in the latter case to act officially until the qualification of a successor, must exist equally in the case of a resignation." Two sentences and parts of sentences in the foregoing opinion are significant: First, it is limited by its

own terms to cases "where the rights of creditors are concerned," and second, it is based upon the premise that it is "the policy of our law that the public convenience shall not suffer from a vacancy in such public offices."

The case just quoted from is founded upon *Badger* v. *United States,* 93 U. S. 599, where it was held that in this State a supervisor, town clerk or justice of the peace, although having resigned and the resignation having been accepted, continues in office and is not relieved from his duties and responsibilities as a member of the board of auditors under the Township Organization law of this State until his successor is appointed or chosen and qualified. In that case it was said: "Where it is said in the statute that the resignation may be thus accepted, it is like to the expiration of the term of office. In form the office is thereby ended, but to make it effectual it must be followed by the qualification of a successor." That case is illustrative of dozens of others from various jurisdictions which have been cited to us, and most of which, like our own opinion above quoted from, say more than they actually decide. By taking excerpts like the foregoing from the opinions of various courts, including our own, it is possible to set forth a confusing array of words and sentences. The confusion, however, is apparent rather than real and is in the language used rather than in the principles promulgated.

We believe that the cases can all, or nearly all, be harmonized while retaining the necessary principles involved, by giving due consideration and weight to what was intended to be the fundamental holding of our own court in *People* v. *Supervisor of Barnett Township, supra.* The language of that opinion indicates the basic holding of the court, which was that one may not evade a duty to a creditor or cause the public convenience to suffer by a voluntary resignation of public office. It would be a narrow and obviously impossible construction of the constitution

to say that a public office may in no case become vacant until a successor to the officer is elected and qualified. Not even the constitution can prevent death from vacating a public office. Neither do we think it can prevent such a vacancy following upon the insanity of the officeholder, his abandonment of the office and leaving the jurisdiction of the court, nor by his refusal to perform its duties and acceptance of inconsistent employment, except where the public interest or the rights of creditors may make it necessary that he be compelled by *mandamus* to perform the duties imposed upon him and assumed by him. The most that the constitutional provision can accomplish is to bridge the gap between successive officeholders and so far as possible protect the public convenience against any hiatus in the occupancy of a public office. Beyond this it is impossible to go, and we do not believe the framers of the constitution intended the impossible. The law does not deal in absurdities nor does it intend the impossible or the unjust. It would be both absurd and unjust to say that Judge Van-Meter having resigned, although practicing law in his own circuit, could continue to draw his salary as judge and continue to hold court over perhaps his own cases. It is conceivable that when he tendered his resignation the Governor might have refused to accept it on the ground that the public convenience required him to continue in office, and it might be conceivable that under such circumstances he could be compelled by *mandamus* to continue to perform the duties of his office. That case is not before us. By accepting the resignation the Governor indicated that the public convenience did not require the judge to remain longer in his office. No rights of creditors or of others holding any vested interest in his official acts are involved in this litigation. Neither can we follow those refinements of reasoning which would say that although a judge has resigned and his resignation has been accepted there is no vacancy in the office. The legislature has specifically

declared that under those circumstances there is a vacancy and has prescribed the means whereby it shall be filled. We find nothing in the constitution to limit the power of the legislature to so declare. Our election machinery is so arranged as to provide for special elections in certain cases to fill vacancies, and if there is no vacancy under such a circumstance there is no legislative ground for the calling of a special election. It is our opinion that the public laws and decisions of this State indicate it to be our policy that an officer may resign when neither the rights of creditors nor the public convenience prevents, and that upon such resignation, as declared by statute, the office becomes vacant.

Upon the other branch of the case we are of opinion that the resignation of the judge terminated the tenure of the relatrix as his court reporter. The precise question appears never to have been before this court, but to arrive at any other conclusion would once more involve us in absurdities which we do not believe the legislature intended. The Supreme Court of Missouri, in *State* v. *McKay,* 249 Mo. 249, 155 S. W. 396, arrived at the same conclusion we have arrived at under a statute which was even more favorable toward the reporter than ours. It was there pointed out that the relation of court reporter to the judge is necessarily a very close, personal one and that the judge depends in a large degree upon the court reporter of his selection in carrying out his official duties. In such a matter as the certifying of a bill of exceptions or report of proceedings at a trial it is obvious that the judge is almost entirely dependent upon the court reporter for the accuracy of details, and it may have been for this very reason that the legislature gave the judges such uncontrolled discretion in the selection of their personal assistants. The statute cannot be construed without noticing that each and every judge of the circuit and superior courts has his personal court reporter. If it should be held that when a judge resigns his court reporter continues in office, it would be with

nothing to do except to draw the salary, because any other judge called in to do the work of the court would have his own duly appointed court reporter to work for him and with him and he might not wish to work with some other reporter.

It is urged that the words "not, however, to extend beyond the time the judge making such appointment shall be elected for," must be given effect in construing the statute, and that these words are in some manner and to some extent descriptive of the term for which the appointment is made. We find no difficulty in giving effect to the words but cannot construe them as counsel insists they should be construed. The statute is that the appointment shall continue in force until revoked by the judge making the appointment, and that the reporter so appointed "shall hold his position during the pleasure of the judge so appointing him, not, however, to extend beyond the time the judge making such appointment shall be elected for." We take it that the last part of. this sentence is intended as a limitation, only, and not a description, of the time for which the appointment is made. If it were not for these words it might be seriously contended that a judge could appoint a reporter to hold the office beyond his own tenure, which would clearly be contrary to the plain intention of the law. We take it that the act means that the appointment is absolutely under the control of the judge making it, and that in order to hold the office a court reporter must be sustained by the continuing will and pleasure of "the judge so appointing him." Without the continuance of that will and pleasure the office necessarily fails. There can be no court reporter for a judge if there is no judge to require such a reporter.

We are of opinion that the circuit court reached a correct conclusion, and its judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE STONE, dissenting.