(No. 34507.—

THE PEOPLE *ex rel.* Floyd H. Krapf, County Collector, Appellee, *vs.* JAMES HAYES *et al.,* Appellants.

*Opinion filed January 24, 1958—Rehearing denied March 19, 1958.*

FLOYD J. STUPPI, WILLIAM J. O'BRIEN, R. W. SPAN-GENBERG, EDWIN R. ECKERSALL, MARVIN A. JERSILD, WILLIAM LINDGREN, and GRAY, THOMAS, WALLACE AND O'BRIEN, all of Joliet, (ROBERT N. WALLACE, of counsel,) for appellants.

FRANK H. MASTERS, JR., State's Attorney, of Joliet, (ROBERT E. HIGGINS, GLENN E. MILLER, CHARLES J. MCKEOWN, JOHN C. LANG, and JOHN D. LYNCH, of counsel,) for appellee.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

This is an appeal by certain railroads from judgments entered in the county court of Will County overruling their objections to the county collector's petition for judgment and order of sale against lots and lands upon which taxes were delinquent for the years 1953 and 1954. Separate objections were filed for each of these years to the taxes extended for building fund purposes for nine school districts and for Illinois municipal retirement fund purposes for six districts. The objections were consolidated for hearing and opinion.

Two principal questions, which we shall consider separately, are presented upon the pleadings and stipulated facts. The first relates to the issue of whether the debased building tax rate established under section 17—5.2 of the School Code (Ill. Rev. Stat. 1951, chap. 122, par. 17—5.2,) and continued in effect under section 17—5.3 (Ill. Rev. Stat. 1953, chap. 122, par. 17—5.3,) or the general building rate authorized under section 17—2, (Ill. Rev. Stat. 1953, chap. 122, par. 17—2,) or the saved building fund rate provided for in section 17—7 (Ill. Rev. Stat. 1953, chap. 122, par.

17—7,) constitutes the maximum extendable building tax rate for the school districts in question for the years 1953 and 1954. The resolution of this issue requires an analysis of certain pertinent provisions of the School Code and the Revenue Act, which refer to school districts having a population of less than 500,000 inhabitants.

Lack of uniformity in tax rates and in the assessment of property, with its attendant inequities, caused the legislature in 1945 to revise the laws pertaining to tax rates and assessments. This legislation is commonly referred to as the Butler laws. (Ill. Rev. Stat. 1953, chap. 120, pars. 643a, 643b, 643c; *People ex rel. Bell* v. *New York Central Railroad Co.* 10 Ill.2d 612.) During the transition from partial to full assessment of property, section 17—5.2 of the School Code, after setting forth certain exceptions inapplicable here, provided that the tax rates of all other school districts shall be established either by resolution adopted after September 1, 1951, and before January 1, 1953, fixing as the maximum tax rate for the building fund "the rate in effect on September 1, 1951 as determined in accordance with Section 162a of the Revenue Act or a rate of .0625% in the case of school districts not maintaining grades 1 to 12, and .125% in the case of school districts maintaining grades 1 to 12, whichever is greater; *provided, that the rate for the building fund so established shall not limit the duties of the county clerk in extending tax rates as authorized in Section 17—7 of this Act,"* (italics ours) or by referendum or inaction. Pursuant to this section, enacted in 1951, each school district involved, either by resolution or inaction, established such tax rate. For districts not maintaining grades 1 to 12, the rate was .0625 per cent, with the exception of one district which established a rate of .084 per cent. The building fund rate established by one school district maintaining grades 1 to 12 was .125. All of these districts had building bonds outstanding except school district number 212. This district

established a building fund rate of .0625 per cent. Section 17—5.2 was repealed in 1953 by House Bill No. 83 which became sections 17—2, 17—5.3 and other sections not pertinent here.

Section 17—2 of the School Code, as amended by House Bill No. 83, (Ill. Rev. Stat. 1953, chap. 122, par. 17—2,) authorized any such school district to levy a tax annually for building purposes upon all of its taxable property at a rate not to exceed .1875 per cent, and its prior provision subjecting this rate to debasement under the Butler laws was deleted.

Sections 17—5.2 and 17—5.3 of the School Code were control provisions which were correlated with the basic grants of authority contained in sections 17—2 and 19—9. Section 17—5.3 provides: *"Notwithstanding any other provisions of this Act,* the maximum lawful tax rate for any fund on the effective date of this amendatory Act, whether representing a statutory rate, a referendum rate, or a rate determined by application of the formula set forth in Section 162a of the Revenue Act, or otherwise, shall continue in effect unless and until changed by referendum held after that date under applicable provisions of this Act. No school district nor the tax rate for any school district shall be subject to any of the provisions of Section 162a of the Revenue Act." (Italics ours) This section continued in effect after its enactment the building rates of the school districts as heretofore established under section 17—5.2. Section 17—7 provided, *inter alia,* that the county clerk, in such school districts, shall determine from the certified copies of bond resolutions filed in his office the amount necessary to pay the maturing principal and interest on bonds of any such school district, and shall extend a separate tax sufficient to pay all such principal and interest thereon without limitation as to rate or amount; and that for any district that has building bonds outstanding on July 1, 1953, its maximum rate for building purposes shall

be reduced by the rate of the separate tax extended to pay such maturing bonded debt, provided that in no case shall the rate for building purposes be reduced below .10 per cent for districts not maintaining grades 1 to 12, nor less than .16 per cent for districts maintaining grades 1 to 12, unless a smaller rate will produce the amount levied for building purposes by the district.

The limitations of sections 162a, 162b, and 162c of the Revenue Act, (Ill. Rev. Stat. 1953, chap. 120, pars. 643a, 643b, and 643c,) ceased to apply to school districts having a population of less than 500,000 inhabitants on December 31, 1952, except to the extent that these restrictions upon tax rates were incorporated in the provisions of sections 17—5.2 and 17—5.3 of the School Code.

A statement of the problem and the statutes involved discloses that this legislation is not without ambiguity. These enactments, being *in pari materia,* should be construed together to determine the intent of the legislature. The primary object of statutory construction is to ascertain and give effect to such intent, and courts should consider the reason or necessity for the enactment, the contemporaneous conditions, existing circumstances, and the object sought to be obtained by the statutes. *People ex rel. Bell v. New York Central Railroad,* 10 Ill.2d 612; *Petterson v. City of Naperville,* 9 Ill.2d 233.

The petitioner urges that the school districts in question which did not maintain grades 1 to 12 were entitled to a maximum building rate of .10 per cent; and that those maintaining grades 1 through 12 were entitled to a maximum building rate of .16 per cent by virtue of section 17—7 of the School Code; that section 17—5.3 continued these authorized rates in effect; and that the building fund rates established under section 17—5.2 and continued under section 17—5.3 are subordinated to the rates provided under section 17—7. The petitioner also suggests that these districts have a building fund rate of .1875 per cent under the

provisions of section 17—2. The objectors contend that the maximum building rates of the districts in question must be determined by reference to sections 17—5.2 and 17—5.3 alone; and that section 17—7 assures a rate of .10 per cent to only those districts which have a building rate in excess of that amount and deals only with the extension of taxes and does not authorize any additional building purpose levy. They assign no particular purpose to section 17—2 and subordinate it to the control provisions of sections 17—5.2 and 17—5.3.

In order to determine the legislative intent, we will first consider the dichotomy of these enactments which both warrant and restrict the levy of taxes by such districts. Sections 17—2 and 19—9 contain the basic tax authorization. Section 17—2 grants to school districts the authority to levy a maximum tax of .1875 per cent for building purposes and section 19—9 authorizes the levy of taxes sufficient to pay maturing principal and interest payments on school bonds.

However, these basic taxing powers are subject to the control provisions of the School Code above mentioned which were designed to scale down the total permissible extension of school taxes in correlation with the restrictions of the Butler laws. A proper understanding of the relationship of these debasement provisions requires a historical consideration of legislation pertaining to building fund tax rates and the Butler laws.

Prior to 1935, the entire taxing authority of school districts was contained in section 189 of the School Law. (Ill. Rev. Stat. 1931, chap. 122, par. 212.) As interpreted by this court, the statute provided that a single maximum tax rate should be extended for both building purposes and the payment of maturing principal and interest on school building bonds. (*People ex rel. Carnine* v. *Wabash Railway Co.* 338 Ill. 382.) In 1935, paragraph B was added to section 189 to permit the extension of taxes for the payment of

any bonded indebtedness even though the rate exceeded the maximum rate for building purposes, but this amendment did not permit the extension of a separate building rate when the bond rate exceeded the maximum building rate. (*People ex rel. Hartman* v. *Terminal Railroad Ass'n of St. Louis,* 375 Ill. 186.) To correct this inequity, the legislature in 1941 again amended section 189 to provide that at least .125 per cent would be saved for building purposes regardless of the tax rate extended to pay any bonded indebtedness for school buildings. (*People ex rel. Hutchcraft* v. *Louisville and Nashville Railroad Co.* 396 Ill. 502.) In 1945, the legislature enacted the School Code and the provisions of former section 189B of the School Law were incorporated into section 17—7 of the School Code. (Ill. Rev. Stat. 1947, chap. 122, par. 17—7.) The tax rate set aside for building purposes, regardless of the rate extended for the payment of bonds, was reduced from .125 per cent to .0625 per cent, in conformance with the purposes of the Butler laws. Thereafter, section 17—7 was amended to provide that the building fund rate saved to school districts having such bonded indebtedness and not maintaining grades 1 to 12 shall be .10 per cent and the rate of such districts maintaining grades 1 to 12, .16 per cent. (Ill. Rev. Stat. 1953, chap. 122, par. 17—7.) With the adoption of the School Code in 1945, the basic building tax rate previously contained in section 189 of the School laws, was incorporated in section 17—2 and, in accommodation with the Butler laws, was reduced from .375 to .1875 per cent. This rate was not changed by subsequent amendments to section 17—2.

The history of this legislative effort, without referendum requirement, to save a building fund tax rate for school districts with outstanding bonds, is clear and leads to the conclusion that the taxes here levied and extended for building purposes were proper. However, objectors contend that the scaling down provisions of section 17—5.2

of the 1951 School Code established a saved rate of .0625 per cent under the provisions of section 17—7 which was continued in effect by section 17—5.3 of the School Code, enacted in 1953. They urge that the building rates established in these districts under the provisions of section 17—5.2 are the basic tax rates, subject to increase by referendum only, and that the building fund rate authorized by section 17—2 is inapplicable. When we consider these enactments together, and note that sections 17—2, 17—5.3, and 17—7 were enacted July 13, 1953, the first two sections as part of House Bill No. 83, and the third as House Bill 84, we cannot find legislative intent to increase the building tax rates for these districts, as established under section 17—5.2, from .0625 and .084 per cent to .1875 per cent for districts not maintaining grades 1 to 12, and from .125 per cent to .1875 per cent for districts maintaining such grades. Such would be the result, without referendum, if we were to determine that the provisions of section 17—2 are decisive. Neither can we find intent to grant to all school districts without referendum or qualification, the applicable saved building rate of section 17—7. While we hold that the basic building tax rates of these districts are those established under the provisions of section 17—5.2 and continued in effect under section 17—5.3, yet we do not believe that these respective rates prevail over the specific provisions for a "saved" building fund rate under section 17—7, as amended in 1953, where such districts have building bonds outstanding. Although the debasement provisions of section 17—5.2, as continued under section 17—5.3, effectively scaled down the maximum building rate authorized by section 17—2 to correspond to the limitations and purposes of the Butler laws, section 17—5.2 specifically provided *"that this rate for the building fund shall not limit the duties of the county clerk in extending tax rates as authorized in Section 17—7 of this Act."* [Italics ours.] The statutory enactments, effective December 31, 1952, which

removed school districts from the application of the Butler laws, (Ill. Rev. Stat. 1953, chap. 120, pars. 643a, 643b, and 643c; chap. 122, par. 17—5.3,) fail to disclose intent on the part of the legislature to freeze the saved building rate at .0625 per cent, the amount then specified in section 17—7, and the increase of this saved rate by the 1953 amendment to this section, which was enacted on the same day as sections 17—2 and 17—5.3, precludes such contention. Objectors further urge that section 17—7 does not give taxing power to school districts, but rather only authorizes the clerk to extend the building rate therein provided if such districts have previously under proper authorizing statute established a building rate equal to the applicable rate of section 17—7, the pertinent part of which provides: "However, for any school district that has outstanding bonds for building purposes on July 1, 1953, the maximum rate for building purposes of any such school district in which such separate tax is extended to pay the maturing principal or sinking fund requirements of and interest on any such bonds shall be reduced by the amount of the rate of such separate tax; provided that in no case shall the rate for building purposes be reduced to less than .10 per cent in the case of districts not maintaining grades 1 to 12, nor to less than .16 per cent in the case of districts maintaining grades 1 to 12, unless a lesser rate will produce the amount levied for building purposes by the districts; * * *." We construe this section as granting taxing authority to school districts which have bonds outstanding, as therein provided, and that to that extent the building rates established under sections 17—5.2 and 17—5.3 are subordinated to the provisions of section 17—7. It is not contended that the legislature was without power to determine the amount of the rate to be saved to such districts under section 17—7. It could have set the saved rate at .10 per cent for districts not maintaining grades 1 to 12, and at .16 per cent for districts maintaining such

grades, or at the rate established for such districts under section 17—5.2 and continued under section 17—5.3 of the School Code, whichever is the lesser, but it did not do so. It is not our function to determine the wisdom of its action.

On this phase of the case we therefore hold that the trial court was correct in overruling objections except with reference to school district number 212. This district had no building bonds outstanding and section 17—7 was without application. Its established rate for building purposes was .0625 per cent, and the building levies above this rate were excessive. The objections should have been sustained to this extent.

We turn next to the objections relating to the extension of the school districts' tax levies for the Illinois municipal retirement fund. These districts levied the maximum tax for such purpose of .025 per cent, which was extended by the county treasurer. Objectors contend that this levy should have been scaled down by the provisions of sections 162a, 162b, and 162c of the Revenue Act. Petitioner urges that under these sections of the Revenue Act and sections 17—5.2 and 17—5.3 of the School Code, these levies were not subject to debasement.

The purpose of these provisions has heretofore been considered. Such legislation pertained to taxes levied under the School Code and such levies were, subject to the limitations of these enactments, removed from the debasement provisions of the Revenue Act. However, the tax levies for the municipal retirement fund are in no way related to the School Code. The Illinois Municipal Retirement Fund Act (Ill. Rev. Stat. 1953, chap. 24, pars. 1175-1201,) is a complete statutory enactment to provide for annuities and benefits to municipal employees. (*People ex rel. Schuwerk* v. *Municipal Retirement Fund,* 6 Ill.2d 405.) Educational personnel of the school districts are excluded from its operation, (Ill. Rev. Stat. 1953, chap. 24, par. 1177,)

and it is in no way related to the general educational purposes of the School Code. The school districts, like any other municipality, must look to the separate Municipal Retirement Fund Act to find authority for such a levy, (Ill. Rev. Stat. 1953, chap. 24, par. 1198,) and that authority is specifically made "subject to the provisions of the General Revenue Law of Illinois." Such levy is not authorized by article 17 of the School Code. When we consider these factors, the intention of the legislature, even though not spelled out precisely, is sufficiently clear. As to levies provided for in the School Code, the legislature incorporated specific scaling down provisions and excluded such levies from the limitations of the Revenue Act. However, when a school district takes advantage of the taxing authority of a separate act, applicable to a number of different taxing bodies, the provisions of the separate act apply, including the incorporated limitations of the Revenue Act. If it were otherwise, school districts which levy for municipal retirement purposes would receive a preferential rate over other taxing bodies making a similar levy. We do not ascribe such purpose or intention to the legislature. We conclude that the provisions of section 162a of the Revenue Act are applicable to the extension of all taxes levied for Illinois municipal retirement purposes. The objections to the excessive portion of such levies should have been sustained.

We accordingly reverse the judgment of the county court and remand the cause with directions to sustain the objections to the taxes levied by such school districts for Illinois municipal retirement fund purposes, to the extent that such levies are excessive. We affirm the judgment of the county court in overruling the objections to the building fund levies of such school districts, except the objection as to school district number 212, and we reverse the judgment of the county court relative to such objection and remand the cause with directions to sustain the objec-

tions to the building fund levies of school district number 212 to the extent that such levies exceed its established building rate of .0625 per cent.

*Affirmed in part and reversed in part
and remanded, with directions.*