(No. 35744, 35761 Cons.—

THE PEOPLE *ex rel.* Benjamin S. Adamowski, State's Attorney, Appellant, vs. OTTO KERNER, Appellee.—THE PEOPLE *ex rel.* Grenville Beardsley, Attorney General, *et al.,* Petitioners, *vs.* EDWARD J. BARRETT, County Clerk, Respondent.

*Opinion filed May 20, 1960.*

SCHAEFER and HERSHEY, JJ., dissenting.

No. 35761, ORIGINAL PETITION for *mandamus*.

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for appellant in No. 35744.

THOMAS M. THOMAS, of Chicago, (THOMAS F. SCULLY, of counsel,) for appellee in No. 35744.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (WILLIAM C. WINES, RAYMOND S. SARNOW, Assistant Attorneys General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for petitioners in No. 35761.

THOMAS M. THOMAS, of Chicago, for respondent in No. 35761.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case involves the validity of the resignation of the county judge of Cook County and the writ of election issued by the Governor of Illinois setting June 6, 1960, as

the date of the special primary election, and November 8, 1960, as the date of the special election of county judge of Cook County to fill the vacancy thus created.

On January 25, 1960, Otto Kerner, an announced Democratic candidate for Governor, wrote and delivered to Governor William G. Stratton a letter of resignation as county judge of Cook County effective at midnight, January 31, 1960, and on January 29, 1960, by letter to Governor Stratton, he purportedly withdrew his resignation upon the suggestion of the county clerk of Cook County. Thereafter, on February 29, 1960, Judge Kerner submitted his purported resignation to such clerk.

On February 3, 1960, the People of the State of Illinois, *ex rel.* Benjamin S. Adamowski, State's Attorney of Cook County, as plaintiff, filed a *quo warranto* complaint in the superior court of Cook County against Otto Kerner, the purported judge of the county court of Cook County, as defendant. Kerner answered the complaint, and upon hearing on February 16, 1960, the court entered judgment in his favor. Notice of appeal was filed on February 17, 1960. Plaintiff filed brief and argument and defendant filed motion to transfer the cause to the Appellate Court, and brief and argument on the motion and on the merits of the case.

On February 23, 1960, Governor Stratton issued and caused to be transmitted to Edward J. Barrett, county clerk of Cook County, and *ex officio* clerk of the county court of Cook County, a writ of election. In this writ he set June 6, 1960, as the date of the special primary election of candidates for the office of county judge of Cook County and November 8, 1960, as the date of the special election of county judge to fill the vacancy caused by such resignation.

On March 1, 1960, the People of the State of Illinois *ex rel.* Grenville Beardsley, as Attorney General, and Benjamin S. Adamowski, as State's Attorney of Cook County, petitioners, filed motion in this court for leave to file an original petition for writ of *mandamus* against Ed-

ward J. Barrett, as county clerk and *ex officio* clerk of the county court of Cook County, respondent. On *ex parte* application we granted leave to file the petition, and the case came before us on petition, the respondent's answer, and briefs.

In the petition, petitioners prayed that this court issue its writ of *mandamus* commanding the respondent to do and perform every official act enjoined upon him by law in respect to holding and conducting the special primary election on June 6, 1960, and the special election on November 8, 1960, to fill the vacancy in the office of county judge of Cook County. On March 3, 1960, we entered an order consolidating the *mandamus* and *quo warranto* proceedings and the cases were argued before us on March 11, 1960.

We are first confronted with the question of the effect of the resignation of Judge Kerner and of its purported withdrawal prior to its operative date. Respondent contends that the resignation was not accepted and that such withdrawal was proper and effective. The views in the various States are conflicting in regard to what constitutes acceptance of a resignation and whether an acceptance is required, (43 Am. Jur. par. 167, pages 23 and 24;) and similar lack of unanimity exists concerning the propriety of withdrawing a resignation and of its effect. The disparity of the authorities throughout the nation stems in part from the diverse provisions of the statutes of the various States pertaining to this subject.

The Illinois constitution provides:

"* * * All officers, where not otherwise provided for in this article, shall perform such duties and receive such compensation as is or may be provided by law. Vacancies in such elective offices shall be filled by election; but where the unexpired term does not exceed one year, the vacancy shall be filled by appointment, as follows: Of judges, by the governor; * * *." Const. of 1870, art. VI, sec. 32.

"In each county there shall be elected the following county officers, * * *: A county judge, * * *." Const. of 1870, art. X, sec. 8.

These constitutional provisions are implemented by the following statutes:

"Resignations of elective offices shall be made to the officer, court or county board authorized by law to fill a vacancy in such office by appointment, or to order an election to fill such vacancy." Ill. Rev. Stat. 1959, chap. 46, par. 25—1.

"Every elective office shall become vacant on the happening of either of the following events, before the expiration of the term of such office: First—The death of the incumbent. Second—His resignation. * * *." Ill. Rev. Stat. 1959, chap. 46, par. 25—2.

"When a vacancy shall occur in the office of judge of the Supreme Court, judge of the Circuit Court, judge of the Superior Court of Cook County, or judge of the County Court, the clerk of the court in which the vacancy exists shall notify the Governor of such vacancy. If such vacancy shall occur within one year before the expiration of the term of the office made vacant, the Governor shall fill such vacancy by appointment; but if the unexpired term exceeds one year, the Governor shall issue a writ of election as in other cases of vacancies to be filled by election." Ill. Rev. Stat. 1959, chap. 46, par. 25—9.

Paragraph 25—2 of the Election Code clearly states that every elective office shall become vacant before the expiration of the term of such office upon the resignation of the incumbent. It does not require that such resignation be accepted. There is a wide spectrum of views as to whether the resignation of an officer effective at a future date may be subsequently withdrawn prior to the effective date of the resignation. Cf.: *Board of Education of Wolfe County v. Rose,* 285 Ky. 217, 147 S.W.2d 83; *Rogers v. Carleton,* 188 Okla. 470, 110 P.2d 908; *Rider v. City of*

*Batesville,* 220 Ark. 31, 245 S.W.2d 822; *Sawyer* v. *City of San Antonio,* 149 Tex. 408, 234 S.W.2d 398.

However, public policy requires that there be certainty as to who are and who are not public officers. Otherwise, there is doubt and confusion which leads to needless litigation. Therefore, the resignation of an officer effective either forthwith or at a future date may not be withdrawn after such resignation is received by or filed with the officer authorized by law to fill such vacancy or to call an election for such purpose. Cf.: *People ex rel McCarthy* v. *Barrett,* 365 Ill. 73; *Pace* v. *People ex rel. McMeen,* 50 Ill. 432.

In the event the rights of creditors or public convenience require that there should be no vacancy in the office from which the incumbent seeks to resign, then affirmative action is required of the officer receiving the resignation in order to preclude it from becoming effective. Absent such affirmative action, the resignation becomes effective either forthwith or upon the future date specified therein, as the case may be, when received by or filed with such officer, and it cannot be withdrawn.

The respondent urges that the writ of election calling for a special primary concurrently with the June 6, 1960, regular judicial election is void; that a primary must be held seven weeks before the election and since the writ of election did not so provide, it is void; that notice of the primary must be given 15 days prior to the 85th day before the primary; and that since such time expired before the petition for writ of *mandamus* was filed, a valid primary cannot be held on June 6, 1960.

Respondent also contends that holding the special primary election at the same time as the regular judicial election would require the electors to openly declare their party affiliation before voting for judges which would destroy the secrecy of the ballot and void the election. However, an elector could vote only in the judicial election and is not required to request the special primary ballot. Further-

more, even if a party primary ballot was taken, this would not preclude the elector from voting, in the judicial election, for a judge who was a candidate of a different political party. Consequently, such procedure would not destroy the secrecy of the ballot or render the writ of election void.

In support of his position that a primary preceding a special election must be held seven weeks before such election, respondent cites the following provision of section 7—5 of the Election Code: "* * * A primary for the nomination of all other officers, nominations for which are required to be made under the provisions of this Article, shall be held seven weeks preceding the date of the general or municipal election for such officers respectively. * * *." (Ill. Rev. Stat. 1959, chap. 46, par. 7—5.) He urges that the election writ calling the special primary and the special election for county judge with twenty-two weeks intervening between such primary and election are contrary to the statute and void.

However, section 25—9 of the Election Code provides that "if the unexpired term exceeds one year, the Governor shall issue a writ of election as in other cases of vacancies to be filled by election."

Section 7—5 of the Election Code also pertinently provides: "A primary shall be held on the second Tuesday in April in every year in which officers are to be voted for on the first Tuesday after the first Monday in November of such year, for the nomination of candidates for such offices as are to be voted for at such November election." Under this provision, the primary election for county judge is held on the second Tuesday in April in every year in which such officer is to be nominated and the election of the candidates so nominated is held on the first Tuesday after the first Monday in November of such year. These statutory provisions are in *pari materia,* but are not without ambiguity. Consequently, they should be construed together to determine the intent of the legislature. *People*

*ex rel. Krapf* v. *Hayes,* 13 Ill.2d 143; *People ex rel. Bell* v. *New York Central Railroad Co.* 10 Ill.2d 612.

The intervening period between the second Tuesday in April and the first Tuesday after the first Monday in November of such year is far in excess of seven weeks. Resignations from office may be, and are, submitted at varying times. The legislature was aware of these facts and of the cost of elections and we cannot believe that it intended to place the election writ to be issued by the Governor within the straightjacket of the "seven weeks" provision of the above quoted portion of section 7—5. Rather, we conclude that the legislature, by the provisions of section 25—9 above quoted, intended to authorize the Governor to issue a writ of election without observance of the seven weeks time limitation of section 7—5. Such construction accords to the legislature a common-sense and practical appreciation of the need for some discretion under the circumstances in order that vacancies in office may be filled expeditiously and economically. In filling vacancies in office by special primary and election, there must be room for an expansion and contraction of time tables which are observed in the regular election procedures.

Respondent has also urged that notice of the primary must be given 15 days prior to the 85th day before the primary and that since such notice was not given, it is not possible to hold a valid special primary election on June 6, 1960, for the nomination of candidates for county judge. He bases this contention on the following provisions of the Election Code: "In cases where a primary election is required the officer or board or commission whose duty it is under the provisions of this Act relating to general elections to call an election, shall fix a date for the primary for the nomination of candidates to be voted for at such special election. Notice of such primary shall be given at least 15 days prior to the maximum time provided for the

filing of petitions for such a primary as provided in section 7—12." Ill. Rev. Stat. 1959, chap. 46, par. 7—61.

"Where the nomination is to be made for a county office, trustee of a sanitary district (except clerk of the Appellate Court of the first district) then such petition shall be filed in the office of the county clerk not more than 85 nor less than 78 days prior to the date of the primary." Ill. Rev. Stat. 1959, chap. 46, par. 7—12(2).

However, respondent has neither offered, nor have we found, any statute or citation which discloses what notice shall be given of such primary at least 15 days prior to the maximum time provided for the filing of nomination petitions or how it shall be given. In a primary which is not called specially by an election writ, the statute provides the only notice which is given to prospective candidates concerning the time for filing petitions and the other requirements in connection therewith.

We conclude that section 7—61 of the Election Code above quoted required that the writ of election issue at least 15 days prior to the maximum time provided for filing petitions for the special primary election for county judge and that the writ of election, itself, is the notice of such primary which must be given at least 100 days prior to the primary election. This notice for the benefit of prospective candidates is not to be confused with the notice of primary election provided for in section 7—15 of the Election Code, (Ill. Rev. Stat. 1959, chap. 46, par. 7—15,) or with the notice of election referred to in section 12—1. (Ill. Rev. Stat. 1959, chap. 46, par. 12—1.) The writ of election, dated February 23, 1960, was issued more than 100 days prior to the special primary election which was called for June 6, 1960. Thus, we find no merit in respondent's argument in this respect.

Defendant Kerner filed a motion to transfer the appeal in the *quo warranto* proceeding to the Appellate Court in that

neither a franchise nor freehold was involved, nor was the validity of a statute or ordinance, the construction of the constitution, or a matter relating to revenue, in controversy, nor was the State a party to the proceeding.

The plaintiff in this proceeding invoked the jurisdiction of this court under the theory that the validity of a statute was involved, the pertinent provisions of which are: "In the case of death, resignation or disability of the judge of a city, village, town, county, or probate court of any county, the clerk of such court may designate and call any city, village or town court judge to hold such court; and such city, village or town court judge, when so designated and called, may hold such city, village, town, county or probate court and perform all the duties of the judge thereof, until the appointment or election of his successor, or until the disability to act ceases." Ill. Rev. Stat. 1959, chap. 37, par. 338a.

The alleged constitutional issue involved nothing more than the application and construction of the pertinent provisions of the statute. It did not directly concern the validity of the statute or the construction of the constitution. (*Berlemann* v. *Superior Distributing Co.* 12 Ill.2d 386; *People ex rel. Gregg* v. *Tauchen,* 415 Ill. 91.) In view of the absence of any constitutional question or other jurisdictional basis the motion to transfer the *quo warranto* proceeding to the Appellate Court is well founded. *In re Estated of Kaindl,* 411 Ill. 608, 611; *Retail Liquor Dealers Protective Ass'n* v. *Fleck,* 406 Ill. 24, 27.

However, "under the theory that a cause should not be transferred unless some useful purpose may be served thereby, (cf. *Village of Lansing* v. *Hacker,* 7 Ill.2d 258, at 260; *Teren* v. *City of Chicago,* 413 Ill. 141 at 145; and *De La Cour* v. *De La Cour,* 363 Ill. 545 at 548,)" (*Leffler* v. *Browning,* 14 Ill.2d 225, 229,) we conclude that the motion to transfer should be denied. The foregoing rationale, which was determinative of issues in the *mandamus* pro-

ceeding, is likewise decisive of the points raised in the *quo warranto* appeal and the quo warranto judgment should be reversed.

This case was argued and submitted on March 11, 1960, and decided on March 13, 1960, at which time an order was entered directing that the writ of *mandamus* issue as prayed and reciting that opinion would follow. Thereafter, respondent filed petition herein reciting that only one nominating petition had been filed by a Republican candidate for county judge of Cook County and one by a Democratic candidate for such office within the time prescribed by law; and that section 7—12 of the Election Code provides: "* * * In any case where the name of not more than one person of each political party is entitled to be printed on the primary ballot as a candidate for the nomination for any office to be filled at an election *at which no other offices are to be voted on* the city clerk, county clerk or State Electoral Board as the case may be shall certify the name of such person as the nominee for such office and no primary shall be held." Ill. Rev. Stat. 1959, chap. 46, par. 7—12. (Italics ours.)

In such petition, respondent sought instructions as to whether, under the writ of *mandamus* issued herein and the above provisions of the Election Code, he should provide for a special primary on June 6, 1960. Since no other offices were to be voted upon in connection with the special primary election, we entered an order on March 30, 1960, which provided that the respondent, "subject to the terms of the appropriate provisions of the Election Code, certify the names of the candidate of the Republican Party and of the Democratic Party, respectively, as the nominees of each of said respective parties, for the office of County Judge of Cook County and that no special primary election be held on June 6, 1960, for such office." We further ordered that "Respondent henceforth comply with the provisions of the Illinois Election Code with respect to holding the

special election for County Judge of Cook County, called for November 8, 1960, as directed in the writ of *mandamus* issued herein."

This opinion is filed in compliance with the order entered herein on March 13, 1960, directing that writ of *mandamus* issue commanding the respondent to do and perform every official act enjoined upon him by law as county clerk of Cook County and as *ex-officio* clerk of the county court of Cook County, with respect to the holding and conducting of the special primary election of June 6, 1960, and special election of November 8, 1960, to fill the now vacant office of county judge of Cook County.

*Judgment reversed; writ awarded.*

Mr. JUSTICE SCHAEFER, dissenting:

I think that the court should not have directed the issuance of a writ of *mandamus* to compel the holding of a special primary and a special election. In my opinion no vacancy in the office of county judge existed when the special elections were called. Moreover, I think that those elections were called in violation of applicable statutes, the validity of which has not been attacked.

The original resignation in this case was delivered to the Governor on January 25, to take effect at midnight on January 31. The Governor did not accept the resignation or reject it. He did not acknowledge its receipt. On January 29, Judge Kerner withdrew his resignation. On February 23, the Governor called the special elections. Upon these facts, the question presented is whether a resignation, which by its terms is not to become effective until a future date, can be withdrawn before it is accepted or acted upon.

The "wide spectrum of views" upon this question, to which the opinion alludes, is not really so very wide. Neither of the two Illinois cases cited in the opinion is concerned with that question, and that question was not involved in any of the four cases from other jurisdictions

that are cited in the opinion. Counsel have referred to no case that holds that a resignation to take effect in the future may not be withdrawn before it has been accepted or acted upon and we have found none. Those decisions that have approached the question intimate or hold that it should be decided the other way. See, e.g., *Warner* v. *Selectmen of Amherst,* 326 Mass. 435, 95 N.E.2d 180; *Green* v. *Jones,* (W. Va.) 108 S.E.2d 1; *Biddle* v. *Willard,* 10 Ind. 62; *State* v. *Clayton,* 27 Kan. 442; *Sawyer* v. *City of San Antonio,* 149 Tex. 408, 234 S.W.2d 398.

The decision of the majority not only is unsupported by the authorities; it serves no sound policy objective. Certainty as to the identity of public officers is not affected. There seems to be no good reason why a withdrawal should not be permitted before a resignation has been accepted or acted upon. Neither in government nor in business does advance notice of a future resignation benefit the person who is resigning. Such a notice is ordinarily designed to avoid or minimize the inconvenience that would follow upon an unannounced resignation. The net effect of the majority opinion will be to curtail or to eliminate in the case of public officers, and probably public employees as well, a wholesome practice that operates to serve the convenience of the public. I think that result is undesirable.

The requirement of section 7—61 that notice of a special primary must be given 15 days in advance of the time for filing nominating petitions is unmistakable. The opinion properly indicates that the purpose of this notice is to give prospective candidates time to determine whether they wish to seek the nomination and to get signatures on their nominating petitions. But it then eliminates this requirement from the law. It does so by holding "that the writ of election, itself, is the notice of such primary * * *." If that was what the General Assembly meant, it would have said so.

The majority apparently reaches the result that it does

because it is not satisfied with the form of notice provided in section 7—15. That section provides for a notice which is required to be published in two or more newspapers in election units having less than 500,000 population, and three copies of which are required to be posted in each precinct in units having more than 500,000 population. The notice is required to state the time and place of the primary election, the offices for which candidates will be nominated and the political parties entitled to participate in the election. It also is required to state the hours during which the polls will be open.

The form of notice described in section 7—15 is also the notice that is required to be given, in the manner described, 20 days before the date of the primary. It is obvious that a better form of notice could readily be drafted for the specific purpose of advising prospective candidates of the impending primary. But it is equally obvious that the General Assembly has required that notice be given, and the fact that a better form of notice could be prepared does not, in my opinion, justify the court in disregarding the statutory requirement. It is of course no answer to say that in the case of regular primary elections, the date of which is fixed by law, prospective candidates are required to take notice of the statute, and no additional notice is required. Cf. *Bilek* v. *City of Chicago,* 396 Ill. 445, 459 ff.

In awarding the writ of *mandamus* in this case the court has also disregarded section 7—5 of the Code. That section fixes the time for all primaries. The primary for the regular November election is fixed for the second Tuesday in April. The primary for the regular April municipal elections is fixed for February. The section then continues: "A primary for the nomination of all other officers, nominations for which are required to be made under this Article, shall be held seven weeks preceding the date of the general or municipal election for such officers respectively."

This section is made applicable to special primaries by section 7—61 which directs that "Whenever a special election is necessary the provisions of this Article are applicable to the nomination of candidates to be voted for at such special election." Section 7—5 thus governs the time interval between the special primary and the special election in all cases of special elections to fill vacancies. Indeed, it was conceded upon the argument of this case that it can refer to nothing else.

The opinion states that "In filling vacancies in office by special primary and election, there must be room for an expansion and contraction of time tables which are observed in the regular election procedures." But room for "expansion and contraction" in the time interval between a special primary and the ensuing special election is exactly what the General Assembly has forbidden.

Mr. JUSTICE HERSHEY joins in this dissent.